HIRAM POOLE and CALVIN J. MAHAFFY v. THE STATE.

1. CRIMINAL LAW. *Homicide. Murder. Indictment for at common law and under the Statute.* An indictment in the common law form is sufficient to embrace murder in the first degree.
Code cited: Sections 4598-9.

2. SAME. *Same. The words of the Statute must be employed. When.* The words "wilful," "deliberate," "malicious," and "premeditated," have an independent meaning which is a necessary ingredient of murder in the first degree, all of which must be present, leaving nothing to inference, or to be supplied by intendment. In *this* view a majority does not concur. Judge TURNEY dissenting.

Cases cited: Dale v. The State, 10 Yerg., 552; Luster v. The State, 11 Hum., 169; Kirby v. The State, 7 Yerg., 264; Mitchell v. The State, 8 Yerg., 514.

3. SAME. *Same. Evidence. Character. Cross-examination.* In the cross-examination of witnesses touching character, it is incom-

Hiram Poole and Calvin J. Mahaffy *v.* The State.

petent to prove that the witnesses " have heard " certain things or offenses charged to the accused. While it is true that a witness may estimate his own knowledge of the party whose character is in issue, he must do so in connection with his knowledge of his standing in the community in which he lives and did live at the time in which the inquiry may be made; to legalize testimony of character the witness must have heard a sufficient number of persons speak of the assailed to be able to express the well-founded opinion that he believes he knows what a majority would say if called on to speak. Even so when it is intended on cross-examination to assail character; the same rule obtains and the things or offenses offered to be proved must constitute a part of the general character.

4. SAME. *Same. Charge of Court.* The words defining the offense of murder in the first degree have a technical meaning, and it is the duty of the Court trying an indictment for the crime to give such meaning to the jury in the charge, and not merely to use the language. The jury is not presumed to understand it any more than it is presumed to understand any other technical term. While it is not abstract error to say to the jury, "before you can find the defendants guilty before the law, the testimony must be sufficient to exclude every other reasonable hypothesis but the guilt of the defendants." The Court should have explained that the proof must exclude the idea that the deceased might have come to his death in a manner inconsistent with the guilt of the accused; that if the facts generated in its minds a probability that the deceased came to his death by other means they should acquit. That the proof need not show that another was the guilty agent or other means the instrument, but that it would be sufficient if such tendency in the proof created a reasonable doubt of the guilt of the accused.

FROM ROBERTSON.

Appeal from the Circuit Court. JAMES E. RICE, Judge.

Hiram Poole and Calvin J. Mahaffy *v.* The State.

J. E. & A. E. GARNER for Poole and Mahaffy.

JAMES L. WATTS and J. B. HEISKELL, Attorney General, for the State.

TURNEY, J., delivered the opinion of the Court.

Murder, at common law, embraced murder in the first and murder in the second degrees, as defined in Sections 4598-9 of the Code, brought forward from the third section of the Act of 1829, ch. 23. The statutory distinction is not only founded in mercy and humanity, but is well fortified by reason. In my opinion, while an indictment at common law is also good under the statute, it is only good to support a conviction for murder in the second degree, unless it contain words of like significant import with those of the statute.

It is the defining words of the statute that make the offenses and the distinction between them, definitions and distinctions in the control of the Legislature—control it has exercised, and the Courts are bound by it.

It is too late, after the words of the Act have been so long, uniformly and plainly construed, to attempt to make any two of its words have the same meaning—a meaning of equally forcible import—so as to excuse or do away with the employment of one in an indictment for murder in the first degree.

Each of the words used has been defined by this Court in more than one case, and by that definition

each has a meaning comprehensive within itself not peculiar to either of the others.

The words are, "willful," "deliberate," "malicious," and "premeditated." We must presume that the Legislature intended (as this Court has held), that each word had its independent meaning, which was a necessary ingredient in the crime of murder in the first degree. While it has been holden that words of the same import will be sufficient, such holding has gone as far as construction and authority will allow, leaving it still the safer plan to employ the words of the law creating and defining the offense. Certainly we must not go to the extent of dropping one of the words, nor substituting another of a like import, and giving to another a meaning not only broad enough for itself, but also for its co-employee in language.

In *Dale* v. *The State*, 10 Yerger, 552, Judge Green says: "The killing must be done willfully—that is, of purpose with intent that the act by which the life of the party is taken should have the effect; deliberately—that is, with cool purpose; maliciously—that is, with malice aforethought; and with premeditation—that is, a design must be formed to kill before the act by which the death is produced is performed. In other words, proof must be adduced to satisfy the mind that the death of the party slain was the ultimate result which the concurring will, *deliberation* and *premeditation* of the party accused sought;" making a marked distinction and independ-

ence between the the terms "deliberation" and "premeditation," and excluding the idea of the substitution of the one for the other, or 'of tautology in their use.

In the case of *Luster* v. *The State,* (a case of robbery), 11 Hum., 169, Judge Totten says: "It may indeed be inferred from the averments contained in the indictment that the goods were taken from the person of the prosecutor and against his will, but in criminal prosecutions of the grade of felony, at least, nothing that goes to the substance of the offense should be left to intendment—it should be *distinctly* averred."

And so we say of the indictment in this case, it may be inferred that murder in the first degree was committed, but it is not distinctly averred. To infer is to supply by intendment.

In the cases of *Kirby* v. *The State,* 7 Yerger, 264, and of *Mitchell* v. *The State,* 8 Yerger, 514, Judge Green delivered the opinions, which left alone would seem to conflict with the ruling here, but as already seen, Judge Green delivered the opinion in *Dale* v. *The State,* in which he plainly announces the effect of an indictment at common law under our statute. I think his latter holding is more in accord with the intention of the Legislature.

In *Kirby's* case the indictment, after using the common law language, also uses the term, "murder in the first degree," as descriptive of the crime. This fact is noticed in the opinion as one of importance.

Hiram Poole and Calvin J. Mahaffy v. The State.

In . the case before us there is no word or sentence charging a cool purpose, an indispensable ingredient in murder in the. first degree. Willfulness, malice and premeditation may exist without that cool purpose contemplated by the statute as construed. In this view a majority of the Court does not concur, but adheres to the opinion that an .indictment at common law is sufficient to embrace murder in the first degree.

In the cross-examination of witnesses touching character it is incompetent to prove that the witnesses "have heard" certain things or offenses charged to the accused. While it is true that a witness may estimate his own knowledge of the party whose character is in issue, he must do so in connexion with his knowledge of his standing in the community in which he lives and did live at the time in which the inquiry may be made, to legalize testimony of character the witness must have heard a sufficient number of persons speak of the assailed to be able to express the well-founded opinion that he believes he knows what a majority would say if called on to speak. Even so, when it is intended on cross-examination to assail character, the same rule obtains and the things or offenses offered to be proved must constitute a part of general character. To relax the rule would make it quite easy for malicious persons to say things one hour, and the next to prove by the witness called to sustain character that he had heard them.

The words defining the offense of murder in the

first degree have a technical meaning, and it is the duty of the Court trying an indictment for the crime to give such meaning to the jury in the charge, and not merely to use the language. The jury is not presumed to understand it any more than it is to understand any other technical term. The fact that there is a difference in the technical and literal meanings makes it the more important and imperative that they be explained.

It is also the duty of the Court to define in his charge all the offenses embraced in an indictment for this crime. The jury is the exclusive judge of the facts, the Court is a witness to it of the law. When the jury has heard the facts, it is for it to say what offense, if any, has been committed against the law. However plain it may be to the mind of the Court that one certain offense has been committed and none other, he must not confine himself in his charge to that offense. When he does so he invades the province of the jury, whose peculiar duty it is to ascertain the grade of offense. However clear it may be, the Court should never decide the facts, but must leave them unembarrassed to the jury.

The rule that a Court is only required to charge as to such questions as are made by the facts, means simply that if legal questions present themselves by the facts, and which are claimed, either to sustain or refute the charges in the indictment, then it is the duty of the Court to charge upon such questions, but if questions not so raised are urged, it is not

the duty of the Court to charge touching them.    It was never meant that the Court should be excused from defining the offenses averred or embraced in the indictment.

While it is not abstract error to say to the jury, " before you can find the defendants guilty before the law, the testimony must be sufficient to exclude every other reasonable hypothesis but the guilt of the defendants." The Court should have explained that the proof must exclude the idea that the deceased might have come to his death in a manner inconsistent with the guilt of the accused; that if the facts generated in its minds a probability that the deceased came to his death by other means they should acquit. That the proof need not show that another was the guilty agent or other means the instrument, but that it would be sufficient if such tendency in the proof created a reasonable doubt of the guilt of the accused.

Reverse the judgment and remand the cause.