## SAMUEL M. NEELY *v.* THE STATE.

1. CONSTITUTION, ACT OF 1875, CH. 7. *Compensation of Jurors.* Compensation for service of a juror is not a common law right. Such sacrifices of time or personal service, or of property, as this service requires, are compensated for in part by the protection which the Government furnishes for the rights of persons and of property.

2. RIGHT OF TRIAL BY JURY INVIOLATE. The Bill of Rights guarantees to every citizen the right of trial by jury without violation, and by the 7th amendment of the United States Constitution it is declared that the right of trial by jury shall be preserved. This manifestly means that the right shall never be encumbered with conditions which, in their practical operation, may impair the free and full enjoyment of the right. The Act of February 24, 1875, entitled, "An Act to tax the losing party with the jury fees in all cases in civil suits, and to repeal §§4036 and 4037 of the Code," will not operate as an attack upon the integrity of jury trials, and is, therefore, unconstitutional and void.

3. VOID STATUTE. Where part only of a Statute is void, and the residue so dependent upon and connected with the valid part that it cannot be presumed that the Legislature would have passed one without the other, then both are void.

Cases cited: McGinnis *v.* The State, 9 Hum., 43; Trigally *v.* Mayor and Aldermen of Memphis, 6 Cold., 382.

Authorities cited: Mirror of Justice, Ch. 11, §3; Conly, p. 319; Sedg. Con. Law, 413; Commonwealth *v.* Hitchings, 5 Gray, 482; State *v.* Wheeler, 25 Conn., 250.

Code cited: §§3990, 4002, 4003, 4004, 4036, 4037.

### FROM MAURY.

Appeal from the Circuit Court.    JO. C. GUILD, Judge.

No brief for plaintiff.

Attorney-General HEISKELL for the State.

NICHOLSON, C. J., delivered the opinion of the Court.

Samuel M. Neeley was one of the regular jurors appointed by the County Court of Maury County for the May Term, 1875, of the Circuit Court for that county. After serving three days, the jurors were informed by the Circuit Judge that their compensation as jurors could be provided only by taxing the same as costs, against the losing parties, in pursuance of the provisions of Chap. 7 of the Acts of 1875, whereupon Neely declined to serve longer, and for so refusing the Circuit Judge imposed upon him a fine of ten dollars for contempt. From this judgment Neely has appealed.

It is apparent that the object of this appeal is to have the judgment of this Court upon the constitutionality of the Act passed in 1875, entitled "an Act to tax the losing party with the jury fees in all cases in civil suits, and to repeal §§4036 and 4037 of the Code."

The first question which presents itself is, whether the constitutionality of the act referred to is properly raised by the record? It appears from the bill of exceptions, that during the first two days of the Term the jurors in attendance were not engaged in the trial of any cause, the Court being employed on business of the Court not requiring juries; that on the third day the jury was engaged five hours on the trial of

a cause. After that Neely and his fellow-jurors submitted to the Court the question, how, and in what manner, and by whom they were to be paid and compensated for their services for the past two days, and that of the third day? The Court determined, and so announced, that he could not tax either the County or the State with the fees of jurors for any period during which they had not served, or, indeed, any body or persons, and that for periods during which jurors served, the county could only be taxed for such fees where suits were brought in *forma pauperis.*

Upon the rendering of this judgment on the question submitted to the County, Neely declined to serve further as a juror, and thereupon he was fined for contempt. It is clear, that if the judgment of the Court was correct, the juror was in contempt, and was properly fined. But if he was in error in holding that in no event the fees of the jury could be taxed to the County, except in cases brought in *forma pauperis*, then the action of the Court was unauthorized, and the juror was not in contempt. If the Act of February 24, 1875, was null and void, then the law charging the fees of jurors upon the County was still in force, and the Circuit Judge was in error in his adjudication of the question submitted to him. It follows that the question whether the juror was in contempt or not depends upon the question whether the Act of February 24, 1875, is constitutional and valid, or unconstitutional and void. The question is, therefore, legitimately raised by the bill of exceptions.

Neely *v.* The State.

We proceed to examine the constitutionality of the Act of February 24, 1875, Ch. 7. The first section provides, that hereafter the fees allowed ˙ by law to juries in all civil cases shall be taxed and collected as other costs, *provided*, the County shall continue to pay in the same manner now provided by law the said fees on all suits instituted in *forma pauperis.*

The second section provides, that §§4036 and 4037 of the Code be and the same are hereby repealed.

The third section provides, that the˙ Judge presiding at the trial in said civil cause shall apportion the fees of jurors in˙ proportion to the time consumed in the trial of the same, *provided*, that the County shall not be taxed with any part thereof.

Before proceeding to examine the constitutional objections to˙ this Statute, it may not be out of place to notice its practical working. If one of the parties to the suit is solvent, and the other insolvent, the jurors get no fees for their services, unless they decide against the solvent party—except in cases in which the plaintiff sues as a pauper, and then the County pays the fees of jurors, as by the former law. When criminal cases are on trial in the Circuit Courts, if the regular panel of jurors is not engaged, as is common, they are required to attend without employment and without compensation until the criminal trial is ended. So, also, if in civil cases any of the regular panel should be incompetent, or should be challenged, as often happens, and their places are supplied by talismen, the regular jurors so set aside have to continue in attend-

ance, without employment and without compensation. In this way it may frequently occur that the regular jurors, in whole or in part, may be forced to attend Court for days or weeks, without performing any service or receiving any compensation. But this reference to the practical working of the Act only shows the inequality and injustice of its operation. Our business is to examine and determine whether a Statute so unequal and unjust, and one so difficult of execution in practice, if not impracticable, is liable to constitutional objections.

1. It is insisted that the Act violates §21 of Art. 1 of the Constitution, which ordains, that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

The ground of this objection is, that in all civil cases in which the losing party is insolvent, the jurors will have been required to give their particular services to the public use without being compensated therefor.

It is true, that in cases in which the losing party is insolvent, jurors will get no compensation, but in this respect they are placed on the same footing with others whose compensation is taxed as part of the costs of the case. Witnesses and officers of Court are required to give their services, and to look to the costs when collected from the losing party for compensation for their services.

It cannot be assumed that compensation for services as a juror is a common law right. It is stated in the Mirror of Justice, Ch. 11, §4, that in the time of Henry I, it was ordained, that "jurors sworn upon assizes should not have fees."

But it is one of the implied and necessary conditions upon which men form governments, that sacrifices must sometimes be made by individuals for the common good, for which no compensation can be claimed. Such sacrifices of time or personal service, or of property, are compensated for in the protection which the government furnishes for their rights of person and of property. Hence, whenever, in the judgment of the Legislature, it becomes necessary to require the services of jurors in carrying on the Courts, their services may be required, and, if need be, even without compensation; but this must be required in pursuance of laws enacted for that purpose by the Legislature.

But in the present case, the Legislature has not thought proper to require the services of jurors without compensation, they have only required parties litigant, in whose immediate service the jurors may be engaged, to make compensation by way of costs. If it should happen that no compensation is received in cases where the losing party is unable to pay, it is no greater sacrifice than many others are required to make for the common good.

2. The next objection is, that the Statute violates Art. I, §6 of the Constitution, which ordains: "That the right of trial by jury shall remain inviolate, and

no religious or political test shall ever be required as a qualification for jurors."

The settled meaning of this provision of the Constitution is, that the right of trial by jury shall remain inviolate, as it existed at common law at the time of the formation of the Constitution. 9 Hum., 43; 6 Cold., 382.

This right is guaranteed to every citizen, and any Statute which fails to secure the full enjoyment of it is necessarily void.

It is not necessary for us to recur to the origin of this institution, or to trace its history, in order to appreciate its inestimable value in a free government. and to understand why it has been declared to be "the glory of England." This is sufficiently indicated in the fact that it has been solemnly ordained, in all three of our Constitutions, as part of our bill of rights, that trial by jury shall remain inviolate.

But what is the right of trial by jury? It is a right guaranteed to every citizen to have the facts involved in any litigation which he may have tried and determined by "twelve good and lawful men." By good and lawful men, as defined in our Statutes, is meant men "esteemed in the community for their integrity, fair character, and sound judgment." §3990. They must be "freeholders or householders, and twenty-one years of age." §4002. And "no person can act as a juror in any case in which he is interested, or when either of the parties is connected with him by affinity or consanguinity within the sixth degree." §4003.

" Persons convicted of certain infamous offences, persons of unsound mind, persons not in the full possession of the senses of hearing and seeing, and habitual drunkards, are incompetent to act as jurors." §4004.

This reference to the qualifications required by the Statutes for good and lawful men as jurors, which were the common law qualifications, shows with what extreme care the trial by jury has been guarded, and how highly it is appreciated by the people.

It is conceded by the record, that the persons appointed as jurors for the May Term, 1875, of the Maury Circuit Court, were all good and lawful, possessing all the qualifications required by law. The question then arises, in what respect does the Act of February 24, 1875, already quoted, violate the right of trial by jury? The answer is, that the provision, which taxes the fees of jurors as costs on the losing party, is in conflict with the requirement that jurors shall be free from bias, and have no interest in the cause being tried.

It is said by Mr. Conly, p. 319, that many of the incidents of a common-law trial by jury are essential elements of the right. An absence of any interest in the event of the litigation, and an indifference or impartiality between the litigants are common law equities, and are essential elements to constitute a good and lawful jury. The litigants have such a jury guaranteed to them by the Constitution for the trial of their common law cases.

The present question may be illustrated by suppos-

ing a severely litigated suit between two parties, one of whom is solvent and the other insolvent. The jury may be engaged for days or weeks in its trial. Under the Act of February 24, 1875, if they decide the issue for the insolvent man, the fees of the jury, of $1 50 per day, are taxed against the solvent party, and are thereby secured. If they find for the solvent party, their compensation is taxed against the insolvent man and is lost, except when the suit is brought in *forma pauperis.* Such cases are liable to occur constantly in practice. Can it be said that the right of trial by jury remains inviolate in such cases? And yet such is the condition in which the rights of parties are placed by the provisions of the Statute.

It is not necessary to assume that jurors so situated would ordinarily be influenced in their verdicts by the consideration of saving their fees. The question is, whether jurors subjected by the terms of the law to such temptations are the good and lawful men, free from bias and interest in the result, whom parties have a right to set on the trial of their causes?

Until recently witnesses were incompetent to testify if interested in the suit to the amount of a peppercorn. However honest or intelligent they might be, the stern rule of the common law interposed to prevent them from testifying.

If a Judge has the slightest interest in a cause, he is incompetent to preside, both by the common law and by constitutional inhibition.

By the common law, as well as by our Statutes, a

like interest, however inconsiderable, disqualifies a juror from sitting on a trial.

In this way the administration of justice is scrupulously guarded and protected, both by the common law and by Statute. It was intended to preserve and perpetuate the faithful administration of justice by constitutional provisions, to secure on the bench disinterested and impartial judges, and, in the jury box, disinterested and impartial jurors as triers of facts. It is true, that the interest of the juror, under the Act of February 24, 1875, has no existence at the date of his appointment, but whenever he is sworn, and enters upon the trial of a cause, the Act itself declares him interested, to the extent of his fees for his service, in the result of the suit.

We cannot doubt that good men will avoid the jury box, because the Act places them in a position to have their conduct attributed to selfish consideration in making up their verdicts. Suitors will be inclined to dispense with jury trial, because of their apprehension that jurors may not be entirely free from the bias created by their interest in the result. In this way it is easy to see that the integrity of jury trial may be undermined and its value destroyed.

It is not necessary for us to remark, that it is as essential to the due administration of justice that jurors shall be above all suspicion or temptation as that the judges should be, in the elegant language of Mr. Blackstone, "the administration of justice should not only be chaste but not suspected." This remark is as ap-

plicable to the juror as to the Judge. How long could any Court retain the confidence of the country if the Judge was dependent on fees to be taxed to the losing party for his compensation? How long would a Statute making such provision for the salary of the Judges stand before an intelligent Court? The only safe rule by which either the jury box or the bench can retain the confidence of the country is by placing both above suspicion or temptation. This is just what the common law intended, and what our bill of rights quarantees to every citizen.

Again, as already stated, the bill of rights guarantees to all citizens the right of trial by jury, unimpaired and without violation. This manifestly means that the right shall never be embarrassed or encumbered with conditions, which, in their practical operation, may impair or violate the free and full enjoyment of the right. Under the Act of February 24, 1875, no discretion is left to the litigant. He must exercise his right, if at all, upon the condition that the jury is to be paid for their services by the losing party. In many cases this condition may, in practice, and probably would, defeat the enjoyment of this right.

We fully appreciate the patriotic motives which influenced the Legislature in the passage of the Act under consideration. It was manifestly designed to diminish the burden of taxation by shifting the expense of jurors to the losing parties in civil causes. In that view we do not assume to question its wisdom.

But the responsibility is devolved on this Court to protect the Constitution from infraction, and, as far as in our power, to preserve the right of trial by jury from violation or impairment. While we are at all times reluctant to differ with a co-ordinate branch of the government as to its constitutional powers, yet, when such difference does exist, we can only discharge our duties by promptly interfering for the preservation and protection of the Constitution. We are, therefore, constrained to hold the first section of the Act of February 24, 1875, Ch. 7, unconstitutional and void.

It is observed, that the §2 of the Act under consideration repeals §4036 and §4037 of the Code. These sections provide for the making out by the Clerk of lists of the jurors, to be delivered to the County Court Clerk, on which warrants are issued to the several jurors, which warrants are made payable out of the County treasury.

It is well settled, that part of a Statute may be unconstitutional and void, while the residue may be valid. But where part only of a Statute is void, and the residue so dependent upon and connected with the void part, that it cannot be presumed the Legislature would have passed one without the other, then both are void. Sedg. Con. Law, 413; *Commonwealth* v. *Hitchings,* 5 Gray, 482; *State* v. *Wheeler,* 25 Conn., 250.

It is entirely manifest that the repeal of §4036 and §4037 was a mere consequence of the passage of the first section. Indeed, the first section would have operated by implication as a repeal of these two sec-

tions.   It follows, that the entire Act of February 24, 1875, is null and void, as if it had never passed, and that §4036 and §4037, and any others repealed by the Act of February 24, 1875, are still in full force.

It follows that the action of the Circuit Judge is reversed, and the defendant Neely discharged of the contempt.