## JACOB GRAY v. THE STATE.

1. CRIMINAL LAW. *Malice. When presumed. When jury to determine.* The fact of homicide once established, the killing is presumed to be ma-licious, in the absence of rebutting circumstance, but no great im-portance is to be attached to the rule, where the facts and circum-stances attending the deed are in proof, in which event the jury must determine the question of malice for themselves.

2. SAME. *Murder in the second degree. What constitutes.* To constitute murder in the second degree, the proof must show that the killing

Gray v. The State.

was unlawful and malicious. The cool, deliberate purpose requisite to constitute murder in the first degree is not essential in making out this crime; and, though the proof might show that the defendant did not design to kill, still, if the design was formed upon a sudden impulse of passion, without adequate provocation, and disconnected with any previously formed design, and if executed wilfully and maliciously, it would be murder in the second degree.

3. SAME. *Evidence, degree of.* The law presumes the innocence of a defendant until his guilt is established beyond a reasonable doubt, and whilst the fact that he bears a close relationship to the party slain is an important fact to be considered by the jury, as showing the absence of a motive for the deed, and the improbability of so unnatural a crime. Yet beyond this the law does not require any different degree of evidence to make out the case from that required in any other case.

Case cited: Troxdale v. The State, 9 Hum., 411.

---

FROM RUTHERFORD.

---

Appeal from the Criminal Court. THOMAS N. FRAZIER, Judge.

B. F. LILLARD, WASHINGTON & SMITH, and J. B. DARRAGH for Gray.

ATTORNEY-GENERAL for State.

McFARLAND, J., delivered the opinion of the Court.

The prisoner was indicted for the murder of Geo. Gray, his father, was convicted of murder in the 2nd degree, and sentenced to ten years imprisonment in the Penitentiary, and has appealed from the judgment of the Court.

Several exceptions are taken to the charge of the

Judge to the jury. The following passage is excepted to :

"It is a general rule of law, that all homicide is presumed to be malicious, and amounting to murder, at least in the second degree, until the contrary is made to appear, from circumstances of alleviation, excuse or justification, and it is incumbent on the defendent to make out by proof, such circumstances to the satisfaction of the jury, unless they arise out of the evidence by the State."

This passage, taken as a whole, and especially in connection with the balance of the charge, which is full and explicit upon every point, we think is not erroneous. The general rule stated by the Judge, that all homicide is presumed to be malicious, in the absence of circumstances rebutting the presumption, has been often announced by this Court. We have, in a recent case, expressed the opinion that, while this presumption would be important in a case where nothing but the fact of the unlawful homicide appears; that no great importance should be attached to it, in a case where the facts and circumstances attending the homicide are in proof, but the jury should rather be left to determine this question from the entire case.

It will be seen, from the above extract, that his Honor qualifies the general proposition by leaving it to the jury to say whether the malice is rebutted by the circumstances arising out of the proof either for the State or defendant. Practically, this is substantially the same rule we have approved, and particu-

larly as in other portions of the charge the jury were
fully instructed as to what would reduce the killing
to manslaughter.

Next, in defining murder in he second degree his
Honor said the proof must show that the killing was
unlawful and with malice, but that it was not neces-
sary that it be done with the cool, deliberate purpose
requisite to constitute murder in the first degree.
" Hence," he continues, "although the proof might
show that the defendant did design or intend to kill,
still, if it appeared that such design was formed upon
a sudden impulse of passion, disconnected with any
previously formed design, although it was executed
wilfully and maliciously, it would not amount to more
than murder in the second degree."

The argument is, that killing upon a sudden im-
pulse of passion is manslaughter, and not murder in
the second degree. It is observed, however, that his
Honor says in this same connection, that the killing
must be *malicious* to constitute murder in the second
degree.

To reduce the offence to manslaughter, the killing
must not only be upon a sudden impulse of passion,
but this must be produced by adequate provocation.
This is fully explained in a subsequent portion of the
charge. The charge is, therefore, not erroneous in
this respect, although the expression " sudden impulse
of passion," used in defining murder in the second de-
gree, unless properly guarded, might sometimes be
misunderstood.

. It is next argued that, as the prisoner is charged with the murder of his own father, the law requires stronger evidence to establish the charge, than if this relationship did not exist. The defendant is in all cases presumed to be innocent until his guilt is established beyond a reasonable doubt; nothing more than this could be required in any case. It is certainly true, that the fact of the relationship was important to be considered by the jury. The absence of a motive for the deed, the improbability of such an unnatural crime, are all important to be considered, and a jury ought not, and would not believe a party guilty of such a crime, if the testimony can be explained upon any other hypothesis; but we do not understand that beyond this, the law requires any different degree of evidence to make out the case. In this sense, we understand the remarks of Judge Turley, in *Troxdale* v. *The State,* 9 Hum., 411.

Upon the testimony set out in the bill of exceptions, we are of opinion that the jury were warranted in finding the verdict they did. That the deceased was killed by a pistol shot fired by the defendant, admits of no doubt. As to the circumstances attending the killing, there is conflicting testimony.

. The facts which would tend to throw light upon the transaction are not so fully set forth in the bill of exceptions, as it seems to us they might have been. There is much obscurity in regard to circumstances under which the killing occurred. The theory of the defendant is, that he was at home at his father's house

on the night of the homicide, at the time, under apprehension of an attack from one Singleton, who had threatened him, but the cause of the enmity of Singleton is only darkly hinted at in the record. While there, some one came and knocked at the door and came in; that, believing that it was Singleton and others, he, the prisoner, asked, "is that them men come after me?" and caught up a chair. The reply of the person was, "you will know soon enough for your good." He then put down the chair, caught up his pistol, and attempted to escape by another door; that he was caught by his mother and others of the family, to prevent his going out, they believing that there were other men outside of the house, after him, and that in the scuffle the pistol fired and the deceased was shot, but neither he nor the others of the family knew who it was until they heard him groaning, and found him some distance from the house; it was after dark, and but little light in the house.

We are forced to say, that, although this theory is supported by the testimony of the defendant's mother and brothers and sisters, the only parties present who were examined; that it is in the highest degree improbable, besides being in conflict with the facts and circumstances. The statements of the defendant, himself, and of his mother and brothers, was made shortly after the occurrence.

It is scarcely possible that the deceased was not, at the time, known to his own family, or could not have made himself known in time to have prevented the catas-

trophy.   The jury were satisfied that the killing was
not accidental, but was malicious; the facts and cir-
cumstances, which we do not detail, lead us to the
same conclusion.   The jury have passed upon the
credibility of the witnesses, and have not given credit
to the defendant's witnesses.   Upon the entire case we
cannot disturb their verdict.

Let the judgment be affirmed.