Davɪᴅ Sʜɪꜰʟᴇᴛ, Plaintiff-in-Error,

*v.*

Sᴛᴀᴛᴇ ᴏꜰ Tᴇɴɴᴇssᴇᴇ, Defendant-in-Error.

392 S.W.2d 676.

(*Knoxville,* September Term, 1964)

Opinion filed July 14, 1965.

FRANKLIN PARKS, Jefferson City, for plaintiff-in-error.

GEORGE F. MCCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, for the State.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

David Shiflet, plaintiff-in-error, hereinafter referred to as defendant, was indicted, tried and convicted of murder in the second degree and sentenced to serve not less than ten nor more than twenty years in the State Penitentiary. His motion for a new trial was overruled and the verdict of the jury approved by the trial judge. He has perfected an appeal in error to this Court.

The only assignment of error is the evidence preponderates against the verdict of the jury and in favor of the innocence of the accused.

The rule in this State is a conviction in a criminal case will not be reversed by this Court on the facts unless it is shown the evidence preponderates against the verdict of the jury and in favor of the innocence of the defendant. *White v. State,* 210 Tenn. 78, 356 S.W.2d 411 (1962); *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963).

It is also an established rule the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves any conflict in the testimony in favor of the insistence of the State. A verdict of a jury also removes the presumption of the innocence of the defendant; and, here, creates a presumption of his guilt and places the burden on him of showing the evidence preponderates against the verdict and in

favor of his innocence. *White v. State,* supra; *McBee v. State,* supra; *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1962).

■ This Court must review the record on appeal from the conviction in the light of the rule, "the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court." *Holt v. State,* supra.

The facts are the defendant was driving his 1950 Model Chrysler automobile on Highway 11-E about one mile east of Morristown on Sunday afternoon, August 20, 1964. His automobile veered into the lane of on-coming traffic and struck a Volkswagen. The four occupants of the Volkswagen, Ernest Lane, age thirty-seven; his son, Donald, age three; and two step-children; Doris Sutton, age eleven; and David Sutton, age ten; were killed.

Sergeant Dewey Bales of the State Highway Patrol testified on the afternoon of the accident he had received a telephone call and as a result was preparing to look for the defendant when he learned of the accident. When he arrived at the scene of the tragedy, the defendant was standing on the side of the road. He led defendant to the patrol car. He smelled alcohol on defendant. The defendant staggered and talked with a thick tongue. Defendant told Bales someone else was driving his car and had disappeared. He admitted he had had two cans of beer.

Bales found a half pint whisky bottle with about an inch of whisky in the bottle on the floor of the car on the driver's side.

Bales was with the defendant approximately two and one-half hours. He was of the opinion the defendant was under the influence of an intoxicant.

The witnesses, Jim Jones and Paul West, smelled alcohol on defendant after the accident, and stated defendant acted like a drunk man. Jones stated defendant, "was staggering all over the road." West stated he based his opinion defendant was drunk on the odor of alcohol and defendant's "walk and talk."

Basil Brooks saw the accident. He was traveling about one hundred feet behind the Volkswagen. He saw defendant's car angle across the road into the path of the Volkswagen. It was necessary for him to pull to the side of the road in order to avoid colliding with the cars.

He saw the defendant and he did not smell alcohol or notice anything unusual about him except he was bleeding about his head.

Claudine and Shirly Potter were traveling behind the defendant prior to the accident. He was driving between thirty-five and forty-five miles an hour. They followed him for some distance and they did not notice anything unusual about his driving until his car pulled over to the wrong side of the road and struck the Volkswagen.

Mrs. Nancy Rines, a nurse, assisted in treating the defendant at the hospital where he was taken by Bales. She did not smell alcohol on defendant.

Dr. Powell M. Trusler testified he treated the defendant at the hospital. Defendant suffered a laceration to his head, a contusion and bruise on his left chest, a contusion of the upper abdomen, and numerous abrasions about his face. He stated defendant had a knot on his

head the size of an egg which could have caused a brain contusion sufficient to have rendered him unconscious.

Dr. Powell did not smell alcohol on defendant. He stated one could not detect whether a person had taken any of the so-called ''knock-out pills.''

Defendant testified he had had no alcoholic drink during the day of the accident. He had taken one diet pill prescribed by a doctor to help him lose weight. He had, prior to the collision, been to Morristown to see his brother, but he was not at home. He could remember nothing from the time he left his brother's home until he was in the hospital. He had black-out spells when he was five years of age, but had had none since. He did not know how the whisky had gotten into his car. He did not remember talking with Sergeant Bales.

James Shiflet, defendant's father, had seen his son approximately an hour prior to the accident. He was not drinking at that time. He saw him at the hospital after the collision and he was not drinking then.

Grant Glasscock had seen defendant off and on the day of the accident and had last seen him about two o'clock P.M. Defendant was not drinking during the times he saw him.

Betty Shiflet, defendant's sister-in-law, had seen defendant about three o'clock P.M., on the day of the collision and defendant was not drinking at that time.

Jimmy Norton testified in rebuttal for the State. He stated he had seen the defendant, Glasscock and two other persons in a booth at a truck stop about one thirty o'clock P.M., on the day of the accident. He did not see any of these persons drinking but could smell the odor of

alcohol. He stated he could not say the defendant was drinking at the time.

■ We think it must be conceded,. from the above review of the evidence, the issue of whether the defendant was under the influence of any drug or intoxicant to the extent his ability to drive an automobile was impaired was for the jury to determine.

However, able Counsel for defendant contends: "It is fundamental, in a criminal case, that the State must establish the defendant's guilt beyond a reasonable doubt, and in the present case that defendant was driving his automobile while under the influence of an intoxicant to the extent that he was not in full possession of his faculties and to such an extent as to deprive him of his sense of discretion and render him extremely dangerous while driving his automobile.

"The evidence in this case is in conflict as to whether there was the odor or smell of an intoxicant on defendant's breath (and this is considering only the State's witnesses), but conceding the odor or smell of an intoxicant, it is respectfully contended that the evidence preponderates that the defendant was not under the influence to the extent as to deprive him of his sense of discretion and render him extremely dangerous in the use of his automobile."

In support of this insistence Counsel reviews the evidence in the case and concludes by insisting no one could conclude beyond a reasonable doubt that defendant's actions after the accident were caused by an intoxicant or drug, rather than his injuries. The fallacy in this argument is the insistence this Court should examine all the evidence and determine whether under that evidence

every other reasonable hypothesis or inference is excluded except the guilt of the accused.

Thus, it is insisted this Court substitute its judgment for that of the jury and trial court. In other words, the argument is, in effect, an insistence for a trial de novo, which the defendant cannot have in this Court, where the jurisdiction is appellate only. *Foster v. State,* 180 Tenn. 164, 172 S.W.2d 1003 (1943).

"The inquiry in this Court is not whether the defendant is guilty beyond a reasonable doubt, but whether on the record made in the Trial Court, the defendant proved his innocence by a preponderance of the evidence." *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188 (1949).

■ This Court will not infringe upon the province of the triers of fact to say what conflicting testimony is to be believed. *Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8 (1950).

■ The defendant, after his conviction, is here under the presumption of guilt, and by their verdict the jury has conclusively determined that those witnesses supporting the theory of the State ought to be believed rather than those supporting the theory of the defendant.

There is positive proof by witnesses for the State the defendant was drunk immediately after the accident. A half-pint bottle with a small amount of whisky in it was found in the defendant's car. It is undisputed defendant's car swerved or veered into the path of the Volkswagen.

■ The fact defendant voluntarily told Sergeant Bales someone else was driving the car and had disap-

peared, is a strong circumstance indicating he was conscious of his guilt of driving the car while under the influence of an intoxicant. *Rogers v. State,* 196 Tenn. 263, 265 S.W.2d 559 (1954).

■ Thus, there is material evidence to support the finding of the jury the defendant wilfully became intoxicated and knowingly drove his car with a reckless disregard for the safety of persons using the highway. Accordingly, we are unable to say the evidence preponderates against the verdict.

Under such circumstances the conviction of murder in the second degree was justified.

It is conceded by Counsel for defendant that the criminal intent necessary to sustain a conviction of murder in the second degree is supplied from an unlawful act which is malum in se, and that driving an automobile while under the influence of an intoxicant is such an unlawful act. *Keller v. State,* 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685 (1927); *Owen v. State,* 188 Tenn. 459, 221 S.W.2d 515 (1949); *Rogers v. State,* supra; *Edwards v. State,* 202 Tenn. 393, 304 S.W.2d 500 (1957).

In the case of *Tarvers v. State,* 90 Tenn. 485, 16 S.W. 1041 (1891), this Court said:

"If the act done was an unlawful act, and the doing of it was directly perilous to human life, and so known to the wrongdoer, that then there is implied such a high degree of conscious and willful recklessness as to amount to that malignity of heart constituting malice. The result may not have been intended, yet the deliberate and conscious doing of an act, the probable

consequence of which was death, amounts to murder at common law.''

For the foregoing reasons, defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and HOLMES, JUSTICES, concur.