# MARIANO ALONSO LEYVA *v.* STATE OF MARYLAND

[No. 233, Initial Term, 1967.]

*Decided September 28, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and PRETTYMAN, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Robert C. Heeney,* with whom was *William J. Rowan, III,* on the brief, for appellant.

*Jon F. Oster, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Appellant, Mariano Alonso Leyva, was indicted on Novem-

ber 15, 1965 by the Grand Jury for Montgomery County on a one count indictment charging him with the murder of Patricia Mancuso. He entered written pleas of not guilty by reason of insanity and not guilty. The case was removed to the Criminal Court of Baltimore where, in a trial before a jury, Judge Joseph L. Carter presiding, he was found to be sane and guilty of murder in the first degree. He was sentenced to life imprisonment. From his conviction he now appeals to this Court.

At approximately 9:40 a.m. on March 29, 1965, Mr. Richard Stevenson, a beauty supply salesman, went to the La Femme Beauty Salon located at 8205 Georgia Avenue, Silver Spring, Maryland, and found the appellant lying in a pool of blood and observed the legs of a female lying behind the receptionist's desk. The Montgomery County police were notified and Officer B. K. Stafford responded to the scene and found the appellant and the deceased as described and, in addition, a Smith and Wesson revolver lying three to four inches from the appellant's left hand and pointed in the direction of the deceased. The appellant was then transported to a hospital where it was determined that he was wounded by two bullets in the chest. At the hospital the appellant admitted to Lieutenant Harold Treadwell of the Montgomery County Police that he had shot the deceased three times and himself twice during a lovers' quarrel. He stated he purchased the gun in question for self-protection since his apartment had been recently burglarized.

On this appeal the appellant raises four questions for decision:

1. Was the evidence legally sufficient for the court to submit to the jury the question of whether appellant was guilty of first degree murder?
2. Was there error in the court's advisory instruction that the law presumes all homicides are commited with malice in the absence of excuse or some circumstance of mitigation and the burden is on the defendant to show circumstances of alleviation, excuse or justification to reduce the offense to manslaughter?
3. Did the trial judge's answer to a question by the jury violate Article XV, Section 5 of the Constitution of Maryland?
4. Was there error in the trial court's refusal to grant that

part of the appellant's Motion for Discovery which pertained to any evidence of an exculpatory nature that the State had in its possession?

## I

The appellant first raises the question that the State did not carry the burden of showing that the killing was wilful, deliberate and premeditated as required by Article 27, Section 407, Code (1967 Rep. Vol.). Thus the appellant asserts that he did not have a specific design to kill (wilfulness); that he did not have a full and conscious knowledge of a purpose to kill (deliberation); and that the killing was not premeditated. "Premeditation" means that the killing must have been meditated, planned in the mind, beforehand; that the design to kill must have preceded the killing by an appreciable length of time, time enough to deliberate.

It is therefore necessary, in order to justify a conviction of first degree murder, that the trier of facts find the actual intent (wilfulness), the fully formed purpose to kill (deliberation), with enough time for deliberation and premeditation to convince the trier of facts that this purpose is not the immediate offspring of rashness and impetuous temper (lack of deliberation and premeditation), but that the mind has become fully conscious of its own design. See *Hyde v. State,* 228 Md. 209, 179 A. 2d 421 (1962). In *Hyde, supra,* it was held that although the design to kill must precede the killing by some appreciable length of time, that time need not be long. If the killing be not the instant effect of impulse, if there is hesitation or doubt to overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder. See also *Cummings v. State,* 223 Md. 606, 165 A. 2d 886 (1960); *Faulcon v. State,* 211 Md. 249, 126 A. 2d 858 (1956).

From a review of the record we find more than sufficient evidence to justify a conviction of murder in the first degree. In addition to the other evidence outlined above, Ronald Louie testified that Leyva spent the night before the killing with him and his wife, that Leyva told him to set the clock early so that he would be sure to awaken and that almost every day for

nearly four years Leyva had stated that he "could kill" the deceased. Carmen Bengston testified that Leyva called her the night before the killing and told her not to come to the La Femme Beauty Salon where she was employed as a hairdresser at her usual time of 9:00 a.m. but rather to wait until 10:00 a.m. Leyva also gave a statement to Lieutenant Gabriel La-Mastra that he shot the deceased three times and himself twice and that he could not remember whether he had reloaded the gun in explanation of why several spent shells were found on the floor within the beauty salon. It has been consistently held in this State that in order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence it is necessary to show that there was no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443, 204 A. 2d 500 (1964). The inference drawn from this testimony negates any notion that the killing was the offspring of rashness or impetuosity, or that it was the instant effect of impulse.

II

The appellant cites the following portion of the trial court's instructions to the jury as erroneous:

> "Now, the law presumes that all homicides are committed with malice * * * in the absence of justification, excuse or some circumstances of mitigation. The burden is on the person accused to show circumstances of alleviation, excuse or justification to reduce the offense to manslaughter * * *."

Citing *Warren on Homicide,* 3rd Edition, Section 148, the appellant contends that the aforegoing portion of the instructions is erroneous as disregarding the presumption in favor of the innocence of the accused which requires the prosecution to prove every averment of the crime beyond a reasonable doubt.

However the appellant has taken the trial court's instructions out of context. That quoted portion was preceded by the following statement:

> "Or, putting it a little differently, and perhaps more concisely, the defendant is presumed to be innocent un-

til he is found guilty beyond a reasonable doubt and to a moral certainty. And, I repeat, that that presumption attends him throughout the trial until it is overcome by proof that establishes, to your satisfaction, his guilt beyond a reasonable doubt and to a moral certainty."

Furthermore, the jury received a fair and accurate instruction on the law of homicide in this State. The trial court explained the distinctions between first and second degree murder and manslaughter and added that in the absence of justification, excuse or some circumstances of mitigation, the law presumes all homicides to be committed with malice aforethought and to constitute murder. The jury was then advised that the presumption is that the accused would be guilty of murder in the second degree and that the burden is on the State to show that the killing was wilful, deliberate and premeditated to elevate the crime to first degree murder and on the accused to show circumstances of alleviation, excuse, or justification to reduce the offense to manslaughter or not guilty. We find no reversible error in the charge.

### III

The appellant contends that a note sent to the trial judge by the jury reading as follows: "Judge: Does second degree murder require premeditation? /s/ Mrs. Jean Jones, Foreman" should not have been answered. There is nothing in Article XV, Section 5 of the Constitution of Maryland which prevents a trial judge from answering a question propounded to him by the jury. In the instant case the judge recalled the jury to the jury box and advised them that his answer was "No", after which they retired and reached their verdict. Since the trial court's initial instructions made it clear that the members of the jury were both the judges of the law as well as of the fact and that his instructions were advisory only, it was not erroneous for them to be further advised of a correct statement of the law.

### IV

Prior to the trial the appellant filed a motion for discovery in the Circuit Court for Montgomery County pursuant to Mary-

land Rule 728. Item five of the motion requested "Any evidence of an exculpatory nature that the State has in its possession."

The court granted the motion as to all the requested items except item five as above set forth and this item was stricken from the order.

Rule 728 provides that upon motion of a defendant and a showing that the items sought may be material to the preparation of his defense, and that the request is reasonable, the court at any time after the indictment may order the State's Attorney:

1. To produce and permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects obtained from or belonging to the defendant or obtained from others by seizure or by process.
2. To furnish the defendant the substance of any oral statement made by him which the State proposes to produce as evidence to prove its case in chief, a copy of any written statement made by him, and the substance of any oral confession made by him.
3. To furnish the defendant a list of the names and addresses of the witnesses whom the State intends to call to prove its case in chief.

The Rule does not provide for the granting of such a broad request as set forth in item five of the motion, and under the circumstances of this case we find no abuse of discretion by the court in denying the requested item. Compare *Brady v. Maryland,* 373 U. S. 83.

For the aforegoing reasons the judgment of the lower court is affirmed.

*Judgment affirmed.*