Vestal EVERETT, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Sept. 15, 1975.

Finnell, Thompson, Scott & Logan, Cleveland, for petitioner.

R. A. Ashley, Jr., Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

COOPER, Justice.

Vestal Everett was convicted of first degree murder for the killing of Steve How-ard and was sentenced to life imprisonment in the penitentiary. The conviction was affirmed by the Court of Criminal Appeals, with one member dissenting. This court granted certiorari for the limited purpose of considering whether the evidence was sufficient to warrant a conviction of murder in the first degree, the point in issue being whether the evidence supports the jury's finding that the killing of Steve Howard was a deliberate, premeditated act.

To convict a defendant of murder in the first degree, there must be an evidentiary basis for a conclusion by the jury that the killing was willful, deliberate, malicious and premeditated. *Bass v. State,* 191 Tenn. 259, 231 S.W.2d 707 (1950). All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. And, if a weapon is handled in a manner so as to make the killing a natural and probable result of such conduct, malice will be presumed from the use of the weapon. *Gann v. State,* 214 Tenn. 711, 383 S.W.2d 32 (1964); *Morelock v. State,* 3 Tenn.Cr.App. 292, 460 S.W.2d 861 (1970). Deliberation and premeditation involve a prior intention or design on the part of the defendant to kill, however short the interval between the plan and its execution. It is sufficient if only a moment of time elapses between the plan and its execution as long as the jury can conclude from the evidence that there was some appreciable interval, however small. And, whether premeditation is present in a given case is a question of fact to be determined by the jury from all circumstances of the case. *Clarke v. State,* 218 Tenn. 259, 402 S.W.2d 863 (1966).

In reviewing the evidence on which the jury predicated its finding of murder in the first degree to see if it supports a finding that the killing was willful, deliberate, malicious, and premeditated, this court must consider the evidence in the light of the rule that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury

which has been approved by the trial court, and that any conflicts in the testimony have been resolved in favor of the jury's verdict. *Osborne v. State,* 512 S.W.2d 612 (Tenn.Cr. App.1974). See also *Shiflet v. State,* 216 Tenn. 365, 367–68, 392 S.W.2d 676, 678 (1965), wherein it is stated:

"It is also an established rule that verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves any conflict in the testimony in favor of the insistence of the State. A verdict of a jury also removes the presumption of the innocence of the defendant; and, here, creates a presumption of his guilt and places the burden on him of showing the evidence preponderates against the verdict and in favor of his innocence. *White v. State,* supra [210 Tenn. 78, 356 S.W.2d 411 (1962)]; *McBee v. State,* supra [213 Tenn. 15, 372 S.W.2d 173 (1963)]; *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1962)."

■ When so considered, we find that Steve Howard died on the parking lot of Brown's Grocery on Sunday, December 31, 1972, from a gunshot wound inflicted by the defendant, Vestal Everett.

The record further shows that beginning in August, 1972, after the defendant and the Howards had lived amiably as neighbors for many years, ill-feeling developed between the defendant and the Howard family, including the deceased Steve Howard. The prime source of trouble between the families was an implicit accusation by a son-in-law of the Howards (Donald Vaughn) that the defendant had found and kept a purse belonging to Barbara Howard Vaughn. Subsequently, Donald Vaughn threw an old purse into the driveway of the defendant with the comment that he could have it back. Angry words passed between Vaughn and the defendant. Steve Howard was present but took no part in the quarrel until the defendant called Steve's wife "a little Indian whore." Steve reacted to the statement and told defendant "he would whip him if he came down there to the road." Nothing further happened at that time. Later Mr. Howard, the father, discovered that his fence corner had been moved in defendant's favor. When he mentioned this to the defendant, the defendant reacted violently and cursed him. The last "flare-up" between the defendant and the Howards occurred on December 23, 1971, eight days before Steve Howard was killed. The deceased, two of his brothers, his father and brother-in-law Vaughn went rabbit hunting on land the elder Howard had rented adjoining the defendant's farm. When the dogs jumped a rabbit, it ran onto the defendant's land and Vaughn and one of the Howard boys followed. The defendant cursed the Howards, and told them to get off his land or he would kill them. As the Howards walked toward their own property, the rabbit jumped again and Mike Howard killed it and picked it up, notwithstanding the defendant's order to "leave the rabbit alone." This action by Mike Howard caused the defendant to repeat his threat to "kill every one of (the Howards) present," if they did not leave defendant's land immediately. The deceased was in the crowd of hunters but did not go onto defendant's land. Shortly afterwards, Steve and Mike Howard were sitting on the hood of Steve's automobile waiting for the rest of the hunting party when the defendant drove onto the road. The defendant and his helper claimed the two Howard boys shouted at the defendant and that Mike swung his fist and a stick at him, but Mike denied this.

On Sunday, December 31, 1972, the defendant was leaving Brown's grocery store when Steve Howard and his brother-in-law, Richard Harris, started across the parking apron toward the store entrance. The defendant said something to Steve Howard, which caused Steve to turn and walk towards defendant's truck. Steve Howard stopped near the front fender of the truck and with his fists closed asked defendant, "What do you want to do about it?" The defendant, in turn, asked Steve Howard, "What do you want to do about it?" The defendant put his groceries into the truck

and, without saying anything further and without any aggressive action on the part of Steve Howard, came up swinging a "claw" hammer at the deceased. The deceased caught defendant's wrists to prevent a blow being struck. The defendant jerked his right arm loose and put his hand in his front pocket. The deceased turned loose of the defendant's left arm, stepped back one or two paces and told the defendant, "You had better not put a knife on me." The defendant replied, "It is not a knife," and pulled a gun and shot the deceased. The gun used by defendant was one that he usually carried in his truck to shoot stray dogs when they chased his farm animals.

The majority of the Court of Criminal Appeals concluded that "upon this record the jury could find and obviously did, that for some time, beginning at least with the lost pocketbook incident, a mutual and deep-seated feeling of hatred and malevolence had developed and grown in intensity between the defendant and the deceased and the members of the latter's family; and that on the fatal day the defendant, having his pistol either in his pocket or on the seat of his truck, deliberately and designedly and premeditatedly baited the deceased by some offensive remark calculated to infuriate him and provoke him to belligerence; that the deceased's reaction and advance with clinched fists was both predictable and predicted by the defendant; and that the defendant planned and instigated this difficulty with the intention and purpose of creating an excuse to kill the deceased and did so while he was backing away from his hammer attack." We agree that this is a reasonable conclusion from the evidence and that the defendant has failed to carry his burden of demonstrating that the evidence preponderates against the jury verdict of murder in the first degree.

Judgment affirmed.

FONES, C. J., and HARBISON, J., concur.

BROCK and HENRY, JJ., dissent.

BROCK, Justice (dissenting).

After having studied the record, I am convinced that the evidence does not support a finding of premeditation which, of course, is a necessary ingredient of murder in the first degree. T.C.A. § 39–2402.

Ever since 1858 murder in Tennessee has been divided into two separate offenses. See *Code of 1858*, §§ 4598–4599. It is of the utmost importance that the courts delineate the two offenses, because the difference in punishment is the difference between life and death, literally. T.C.A. §§ 39–2406, 39–2408. Murder in the first degree includes the lesser offense of murder in the second degree. *Grove v. State*, 211 Tenn. 414, 419, 365 S.W.2d 292, 294 (1963). Willfulness and malice are required elements of both second degree murder and first degree murder; it is the added element of premeditation-deliberation which distinguishes first degree murder from second degree murder. Unfortunately, this distinction between the two offenses has not always been made clear by this Court.

In the case at bar the majority opinion states:

"Deliberation and premeditation involve a prior intention or design on the part of the defendant to kill, however short the interval between the plan and its execution. It is sufficient if only a moment of time elapses between the plan and its execution as long as the jury can conclude from the evidence that there was some appreciable interval, however small."

*Clarke v. State*, 218 Tenn. 259, 402 S.W.2d 863, is correctly cited to support the quoted statement. But, in my view, the Court in *Clarke* did not accurately define "premeditation." More than a split-second intention to kill is required to constitute premeditation.

From the early days of statehood this Court has conceived that the premeditation-deliberation element of first degree murder

requires that the act be performed with a cool purpose. *Drye v. State,* 181 Tenn. 637, 184 S.W.2d 10 (1944); *Winton v. State,* 151 Tenn. 177, 268 S.W. 633 (1924); *Turner v. State,* 119 Tenn. 663, 108 S.W. 1139 (1907); *Poole v. State,* 61 Tenn. 288 (1872); *Dale v. State,* 18 Tenn. 551 (1837). Thus, in *Winton,* our predecessors held that in order to constitute murder in the first degree "the cool purpose must be formed and the deliberate intention conceived in the mind (of the accused), *in the absence of passion,* to take the life of the person slain." (Emphasis added.) If the purpose to kill is first formed during the heat of passion, the accused, to be guilty of first degree murder, must have committed the act after the passion has subsided. "Passion," as here used, means any of the human emotions known as anger, rage, sudden resentment or terror which renders the mind incapable of cool reflection. *Drye v. State, supra.*

It has been held that "premeditation" means that the killing must have been meditated, planned in the mind, beforehand, and that the design to kill must have preceded the killing by an appreciable length of time—time enough for cool deliberation. Of course, to deliberate and to meditate on an act means to think it over and to weigh the consequences, and when there is no appreciable time therefor, there can be no deliberation and no premeditation. Premeditation by its very nature is not instantaneous, but requires *some* time interval. *Jenkins v. State,* 230 A.2d 262 (Del.Supr.); *Leyva v. State,* 2 Md.App. 120, 233 A.2d 498; *State v. Rodriguez,* 23 N.M. 156, 167 P. 426; *State v. Arata,* 56 Wash. 185, 105 P. 227; *Heglin v. State,* 236 Ind. 350, 140 N.E.2d 98.

If the killing is done in passion, that is, in anger, the offense is not murder in the first degree; but, if in passion *adequately* provoked and acted upon before the passion has cooled, it is voluntary manslaughter; and *if in passion in fact,* although the provocation is insufficient to reduce the offense to manslaughter, it is murder in the second degree only. *Drye v. State,* 181 Tenn. 637,

184 S.W.2d 10 (1944). Once the fact of killing has been established, the law presumes it to be murder in the second degree. *Witt v. State,* 46 Tenn. 5 (1868).

Applying the foregoing principles to the evidence in the case at bar, it appears to me that the killing occurred upon a sudden heat of excitement and anger which, true enough, did not amount to adequate provocation sufficient to reduce the killing to voluntary manslaughter, but, does negate a finding of cool deliberation which is essential to a finding of first degree murder. "Although the proof shows that a defendant did intend to kill, still, if the design was formed upon a sudden impulse of passion, without adequate provocation, and disconnected with any previously formed design, and if executed willfully and maliciously, it is murder in the second degree only." *Gray v. State,* 63 Tenn. 331 (1874). The petitioner did not seek out the deceased; he merely went to Brown's Grocery store to purchase some groceries and was on his way back to his pickup truck when he chanced to meet the deceased, Steve Howard. It was only after the deceased, Howard, challenged the petitioner with the words "What do you want to do about it" and followed petitioner to his pickup truck with his (Howard's) hands clenched into fists in a menacing manner that the petitioner placed his groceries in the truck and picked up a claw hammer and took a swing at Howard. At this point in the sequence of events, I am convinced that the petitioner was enraged and pulled his pistol and shot Howard at a time when his mind was under the influence of excitement and passion to such an extent that he was not capable of reflecting and acting with that degree of coolness and deliberation of purpose which our statute requires to constitute murder in the first degree.

I would follow the procedure used in *Forsha v. State,* 183 Tenn. 604, 194 S.W.2d 463 (1946) and hold that the evidence preponderates in favor of the defendant's innocence of murder in the first degree because

of failure to prove deliberation and premeditation, but warrants a conviction of murder in the second degree and, if the State agrees, reduce the sentence to the minimum prescribed for second degree murder, or, if the State does not agree, reverse and remand for a new trial.

HENRY, Justice (dissenting).

I respectfully dissent, and concur in the dissenting opinion of Mr. Justice Brock.

In my view the evidence is insufficient to warrant a finding of first degree murder. I find no proof of premeditation. The encounter between the petitioner and the deceased came about as a coincidence; the deceased, having met petitioner by chance, followed him to his pickup truck with fists clenched and acting in a menacing manner; as a result of the prior differences between the parties and under the stress, excitement and pressure of a passing moment, the fatal shot was fired.

As pointed out by Justice Brock, once the fact of killing has been established, the law presumes it to be murder in the second degree, *Witt v. State,* 46 Tenn. 5 (1868); *Covey v. State,* 504 S.W.2d 387 (Tenn.Cr. App.1973), and the burden is on the State to prove premeditation or some other ingredient to establish that the killing constituted murder in the first degree. *Hornsby v. State,* 479 S.W.2d 653, (Tenn.Cr.App.1971); *Shanklin v. State,* 491 S.W.2d 97 (Tenn.Cr. App.1972).

That burden has not been met. This is a classic case of second degree murder.

I deplore the tendency of our courts to apply this praiseworthy presumption in order to raise the degree of murder, but to ignore it when its application would operate to reduce the degree.

The record in this case reveals that the jury, after deliberating for a time, returned into open court and reported that it had not reached a verdict. In response to a question by the trial judge the foreman reported "I don't think we have had time, sir."

Thereupon, and without further ado the trial judge gave the charge as set out verbatim in *Simmons v. State,* 198 Tenn. 587, 281 S.W.2d 487 (1955).

After the jury had been given this "dynamite" charge it retired and, in due course, returned with a verdict of murder in the first degree.

We examined the *Allen-Simmons* charge in *Kersey v. State,* 525 S.W.2d 139 (Tenn. 1975), released June 16, 1975. In reversing the conviction in *Kersey,* we said:

The right of trial by jury may not be impaired or encumbered with conditions which, in their practical operation, may embarrass or violate the free and full enjoyment of the right. *Neely v. State,* 63 Tenn. 174 (1874).

In our view the *Allen* charge and the *Allen-Simmons* charge operate to embarrass, impair and violate the constitutional right of trial by jury. Any undue intrusion by the trial judge into this exclusive province of the jury, is an error of the first magnitude. We recognize that the trial judge has a legitimate concern in the administration of justice and that he labors under a duty to lend guidance to the jury through instructions as to the governing principles of the law. However, when the effort to secure a verdict reaches the point that a single juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded and the requirement of unanimity is diluted. We view these charges as being tantamount to a judicially mandated majority verdict which is impermissible under Tennessee law.

Moreover, there is an inherent inconsistency in these charges in that the dissenters are urged to reconsider their verdict and simultaneously are reminded to make their decisions based upon their own convictions which they are cautioned not to sacrifice. They ask the dissenters to consider shifting their opinions, because the majority is of a different per-

suasion. We find no merit to any suggestion that might necessarily makes right.

In deference to the trial judge it should be pointed out that this case was tried before we released our opinion in *Kersey*; however, we reversed Kersey's conviction because of the "dynamite" charge and without prior admonition to the Bench and Bar.

It is true that no assignment of error challenged this charge; however, this Court may note plain error. In *Manning v. State*, 500 S.W.2d 913, 914 (Tenn.1973), this Court held that appellate courts in the public interest, may, *sua sponte* note errors to which no exception has been taken if errors are obvious or if they seriously affect fairness, integrity or public reputation of judicial proceedings.

This is such an error.

I would reverse.

### OPINION ON PETITION FOR REHEARING

COOPER, Justice.

■ Vestal Everett has filed a petition to rehear insisting that he was deprived of effective assistance of counsel in the trial court and that he did not receive a fair trial. He also insists that the evidence preponderates against the verdict of first degree murder. These assignments of error are rearguments of basic issues considered by this court in the several opinions filed, which is not the office of a petition to rehear. See *Overstreet v. Norman*, 44 Tenn.App. 343, 314 S.W.2d 47 (1958). However, we have again considered the issues in the light of the argument of counsel and have concluded that the petition to rehear is without merit.

The petition to rehear is overruled.

FONES, C. J., and HARBISON, J., concur.

BROCK and HENRY, JJ., dissent.