THE MAGNAVOX COMPANY OF TENNESSEE, and AMERICAN
MUTUAL LIABILITY INSURANCE COMPANY, Plaintiffs in
Error,

*v.*

CLYDEALEA SHEPHERD, Defendant in Error.

379 S.W.2d 791.

(*Knoxville,* September Term, 1963.)

Opinion filed June 4, 1964.

N. R. COLEMAN, JR., MILLIGAN, SILVERS & COLEMAN,
Greeneville, for plaintiffs in error.

KYLE K. KING, Greeneville, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is a workmen's compensation case in which the employee filed a petition under the provisions of T.C.A. sec 50-1025 seeking the modification of the original judgment on the ground of an increase of incapacity due solely to the injury described in the original petition. The trial judge found there had been an increase in incapacity due solely to the original injury and awarded the employee an additional twenty per cent permanent partial disability.

The trial court overruled the defendant's motion for a new trial resulting in this appeal.

The parties agree that the real issue presented here is whether or not there is any material evidence in the record to support the finding of the court that an increase of incapacity has developed due solely to the original injury.

T.C.A. sec. 50-1025 provides, in part:

"(b) If the parties cannot agree, then at any time after six (6) months from the date of the award an applica-

tion may be made to the courts by either party, on the ground of increase or decrease of incapacity due solely to the injury."

We note at the outset that a casual reading of the record clearly reveals there is material evidence to show that the employee has suffered an increase in her disability since the original award. But the question is whether there is any material evidence in this record to sustain the trial judge's finding that this increased disability is due solely to the original injury.

It was incumbent upon the petitioner to prove by competent evidence not only that she had suffered an increase of incapacity since the original award, but also that such increase was due solely to the original injury.

This record is devoid of any competent testimony to the effect that there is any connection between the increased disability or incapacity and the original injury, much less that the increased disability is due solely to the original injury.

■ ■ While it is true that lay testimony, including that of the claimant is of probative value in establishing such simple matters as the existence of pain, its location, petitioner's inability to work, etc., there are areas in which lay testimony is obviously incompetent. See *Fidelity and Casualty Co. of New York v. Treadwell,* 212 Tenn. 1, 367 S.W.2d 470, 474 (1963). In the instant case the employee and her husband were not competent to testify that the increased incapacity suffered by the employee "was due solely to her original injury." This question was one for a doctor of medicine, thoroughly acquainted with the human anatomy, to determine.

In a letter appearing in the record, Dr. Sherrod, an orthopedic surgeon, said about the petitioner:

"Although her signs and symptoms suggest a lumbar disk lesion it certainly is not clear enough. to let me be positive about this condition."

The trial judge, in commenting upon the testimony of Dr. Sherrod, said: "His statement sheds no light on the question."

With this conclusion of the court we agree.

Dr. Keebler, the petitioner's family physician for a number of years, testified on the original trial and also in the present proceeding. He said that the original injury was along the scapula nerve of the left shoulder, which was generally to the upper back and back nerves. "What we call the posterior shoulder area, but it is of the back, the upper back." The doctor was asked by the court:

"Doctor, could this back injury you claim that she had, could this other condition originate from it? (The present condition).

"A. I don't think so, sir, there's not an overlap of the nerve supply in the two areas, they are two distinct areas."

Defendant's counsel then asked the witness:

"Doctor, in your opinion, is there any causal connection between the leg problem Mrs. Shepherd has, or what she claimed, and the original injury that she claims and that you testified about on the occasion of the first trial of this case on June 15, 1962?

"A. I can't honestly see any possible direct connection between these two injuries, two complaints."

The doctor was then asked:

"In your opinion, Doctor, has there been any change with Mrs. Shepherd, with respect to Mrs. Shepherd's claimed condition as a result of the accidental injury of October 27, 1961, which you have generally described as an upper back condition has there been any change in that condition between the date of the first trial, June 15, 1962, and today?

"A. Well, I can't say honestly that there has or has not, only in that she hasn't required the treatments since that time, as much treatment for this shoulder since that time as she did previously to it."

Dr. Keebler was then closely cross-examined by counsel for the petitioner, but his answer was always that there could be no connection between the first injury and the present condition of Mrs. Shepherd. The areas of pain and disability were separate and distinct.

The doctor did say that a back injury could cause the pain in the legs as claimed by Mrs. Shepherd, but that the pains were not connected with the original injury. He did say that it was possible that the employee might have a disk lesion which could not be detected but if she was so suffering it was in the lumbar area and would have no connection with the original injury which was along the scapula nerve of the left shoulder.

The court said:

"But Doctor, this woman says that she did have an injury and the Court adjudicated insurance benefits, now, could this condition you say might be there, could it flow from this injury, could it or might it?

"A. No sir, no sir, not as extension of it.

"Q. Could you be certain about that, Doctor?

"A. Yes sir, I could be certain about the fact that the left shoulder, an injury to the left shoulder muscle or scapula area could not, in itself, descend to the lumbar area of the spine and produce a disk lesion."

By no stretch of the imagination could it be said that the testimony of Dr. Keebler was competent medical testimony to support the trial judge's findings that the increased disability was due solely to the original injury.

Therefore, if the testimony of Dr. Sherrod shed no light on the question and the testimony of Dr. Keebler is positively to the effect that there is no causal connection between the original injury and the present disability, it results that there is no medical testimony to support the award for increased incapacity or disability.

Dr. Keebler says there is no connection between the scapula area, the site of the original injury, and the present complaint and if he, as a competent medical authority, so testifies, then the testimony of lay witnesses to the contrary would be of no probative value. At best, such evidence would be considered merely speculative and the testimony of the doctor would have to be accepted over that of the lay witnesses under these circumstances. Any other holding would deny the probative force of men learned in a profession and give way to the testimony of those who are totally unfamiliar with the human body and the many complexities therein.

In our review of this record we are unable to find any material evidence upon which a finding for the petitioner could be based.

The judgment of the trial court is reversed and the petition dismissed.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.