AMERICAN ENKA CORPORATION and LIBERTY MUTUAL
INSURANCE COMPANY, Plaintiffs in Error,

*v.*

WILLIAM A. SUTTON, Defendant in Error.

391 S.W.2d 643.

(*Knoxville,* September Term, 1964.)

(May Session, 1965.)

Opinion filed June 2, 1965.

ROBERT R. CAMPBELL, HODGES, DOUGHTY & CARSON, Knoxville, for plaintiffs in error.

FRED L. MYERS, Newport, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

The trial court awarded full benefits to the employee under the Workmen's Compensation Act for the loss of the use of an eye sustained in an accidental injury arising out of and in the course of his employment. From this

award the employer has appealed and contends, here, there was no material evidence upon the trial of the case to support a judgment for the employee.

The petitioner was an employee of American Enka Corporation working as a "spinner" in the manufacture of fabrics and other products. On June 23, 1963, while he was working near a container of acid, a quantity of acid splashed into his right eye which "burnt me bad." Some fifteen minutes later said employee consulted Dr. Jack Clark, an optometrist in the City of Newport. Dr. Clark later referred the employee to Dr. J. Ed Campbell, of Knoxville, a specialist in ophthalmology. The petitioner was placed in a hospital for three days for a series of tests.

Sutton testified that the acid was of such potency that it would "eat your shirt up, it will eat your shoes up." He also made the statement that he had been completely blind in his right eye since the accident.

The optometrist, Dr. Jack Clark, a graduate of the Southern College of Optometry in Memphis, Tennessee, said that he had examined the eyes of petitioner some four weeks before the accident at which time he was complaining of eye strain. At that time Sutton had perfect vision in both eyes. He said that on June 23, 1963, petitioner reported the injury to his right eye as aforesaid. An examination by him on that date showed the petitioner had a mild conjunctivis, a reddening of the blood veins, and that the petitioner had a 20-400 vision of his right eye. He continued to see the petitioner but the vision did not improve.

Dr. Clark testified that in his opinion the splashing of the acid into the eye caused this employee to become legally or industrially blind.

The only evidence introduced by the defendant was that of Dr. J. Ed Campbell, to whom the petitioner had been sent by Dr. Clark. Dr. Campbell is a specialist in the field of ophthalmology, having practiced his profession in Knoxville for some twelve years prior to the treatment of the petitioner. Dr. Campbell received his medical degree from the University of Tennessee College of Medicine, and did further work in ophthalmology at Harvard University and the University of Chicago.

He first saw Sutton on June 27, 1963. Upon examination he found no redness of the eye, no staining of the cornea, or evidence of corneal scarring of the eye, no damage to the eyelid or surrounding areas, and, in short, no evidence of any external damage to the eye whatsoever. While finding no evidence of injury to the eye, he did find that the vision in the right eye on June 27, 1963 was 20-400, confirming the finding of Dr. Clark in this regard.

Dr. Campbell also found an inflammation of the optic nerve or what is called optic neuritis. Sutton was admitted to the hospital for tests which revealed no significant focus infection in the body other than a mild finding of pus in the urine. He said:

In other words, the only way that acid could impair his vision would be from corneal scarring, or external damage to the front part of the eye, and he had no evidence of any external damage whatsoever.

Dr. Campbell stated positively there could be no possible connection between the splashing of the acid in Sutton's eye on June 23, 1963 and the optic neuritic condition which he found on June 27, 1963. He stated that there was no doubt in his mind that the petitioner's loss of vision was caused by optic neuritis rather than by the accident

on June 23, 1963, and give his reasons therefor in answer to the following question:

Q. Now, Doctor, do you have an opinion, based upon reasonable certainty as to whether or not there was any connection between the splashing of the acid in Mr. Sutton's eye, as he related to you and the optic neuritis which you found in his right eye?

A. I personally don't see how there could be any possible connection between the two. I informed Mr. Sutton of this the first visit to the office. Of course, he felt that there was some relationship, but it is impossible for you to get an optic nerve and retina inflammation with an external chemical coming into your eye without having a tremendous amount of damage to the front, or anterior segment of the eye. In other words, it would be almost impossible to get posterior segment damage from an acid burn, but if it was sufficient severity to cause damage to the back part of your eye it would have to cause tremendous permanent damage to the front part of the eye, which he didn't show any.

The scope of review of this Court in a workmen's compensation case has been stated many times to be an examination of the evidence to determine if there be any of a material nature to support the action of the trial judge. If there be any, his judgment is affirmed. If there is none, his judgment is reversed. *Anderson v. Volz Const. Co.*, 183 Tenn. 169, 191 S.W.2d 436 (1946), and other cases.

The question to be decided is whether the testimony of the petitioner and the optometrist is of sufficient probative value to establish a causal connection between the

accident and the loss of the eyesight, despite the expert medical testimony to the contrary.

The employee said that he thought the accidental splashing of the acid into his eye caused the loss of the sight. This is a natural conclusion for him to have reached under the circumstances.

Dr. Clark testified that he thought the acid caused the loss of the eyesight. Dr. Clark, however, is an optometrist and his training is in the field of measuring the powers of vision and the fitting of lenses for the correction thereof. Black, Law Dictionary (4th ed. 1951), defines the profession of optometry as "the measurement of the powers of vision and the adaptation of lenses for the correction and aid thereof."

Taber's Cyclopedic Medical Dictionary (6th ed. 1954), defines an optometrist as a "person who measures the eyes refractive powers and fits glasses to correct ocular defects." A similar definition may be found in Dorland, American Medical Dictionary (11th ed. 1921), to-wit: "the measurement of visual acuity and fitting of glasses to correct visual defects."

It can be seen that the training in the profession of Dr. Clark does not qualify him as a medical expert in the fields of diseases of the eye and, therefore, his testimony is of no more probative value in determining the causal connection between the accident and the loss of eyesight than is the testimony of Mr. Sutton. One is as well qualified as the other in regard to causal connection in this case.

Mr. Sutton said that his eyesight was impaired as a result of the accident. Dr. Clark says that prior to the accident Sutton had 20-20 vision and that after the acci-

dent he had 20-400 vision in the right eye. Dr. Clark's testimony is of value in measuring the sight in petitioner's right eye before and after the accident because he had been trained to test eyesight. However, since his training is in the measurement of vision of the eye and not in the diseases thereof, we do not think his testimony can be considered material evidence to support the award to the employee.

The only competent medical proof in the record is that of Dr. Campbell, a properly qualified medical expert in the field of diseases of the eye. Again, Black, Law Dictionary (4th ed. 1951), defines ophthalmology as the "practice of medicine and surgery in treatment of diseases of the eye." Again, Dorland, American Medical Dictionary (11th ed. 1921), defines ophthalmology as the "sum of knowledge concerning the eye and its diseases."

Dr. Campbell testified very positively that the splashing of the acid in or around the outer portion of the eye could have no causal connection with the disease of the optic nerve, since optic neuritis concerns inflammation of the optic nerve located in the rear portion of the eye and he so informed Mr. Sutton on his first visit to his office.

Dr. Campbell said it is impossible for one to get an optic nerve and retina inflammation from a chemical coming into the eye externally without having a tremendous amount of damage to the front and anterior segment of the eye. In other words, according to him, it would be almost impossible to get posterior segment damage from an acid burn, but if it was of sufficient severity to cause damage to the back part of the eye, it would have to cause tremendous permanent damage to the front of the eye and Mr. Sutton's eye did not show any such damage.

It was the medical judgment and conclusion of Dr. Campbell that the industrial loss of the sight of the eye resulted from optic neuritis and not from the accidental injury.

We consider again the deposition of Dr. Clark which reveals that he was responsive and forthright in his answers, viz.:

Q. Of course you did not examine Mr. Sutton yourself as far as his systemic examination and the medical features of his condition did you?

A. No, I did not.

Q. That was done by Dr. Campbell and Dr. Wilson?

A. Yes sir.

Q. Who are medical doctors?

A. Yes.

Q. And I take it then Doctor that as far as any causal connections between the acid and the optic neuritis you would defer to the opinion of Dr. Campbell and Dr. Wilson?

A. Well they're more qualified in that field.

Q. So that you would feel that Dr. Campbell and Dr. Wilson were more qualified to offer an opinion as to any causal connection between the acid and the optic neuritis?

A. Well Dr. Campbell and Dr. Wilson both are, as you know, medical doctors, which is more specifically related to that field. However, I certainly am qualified to find optic neuritis when it arises.

Q. But as far as the * * *

A. As far as running any tests for that sort of thing or for any other systemic thing, I did not.

Q. As far as the *medical relationship* between the *optic neuritis* and any other condition in the system of the person *you would not be qualified to testify?*

A. *No, no, not professionally.*

(Emphasis supplied)

It must be remembered that we are dealing with delicate mechanisms of the eye, including the optic nerve and to make an award in this case based upon conclusions unsupported by scientific knowledge is not sufficient to meet the requirement that there shall be *material* evidence to support the award.

██ Petitioner cites the case of *Fidelity & Cas. Co. of New York v. Treadwell,* 212 Tenn. 1, 367 S.W.2d 470 (1963), quoting a statement therein that

"* * * the testimony of an injured person as to the extent of his injuries may be believed in preference to the opinions of 'a whole college of physicians' testifying to the contrary." 212 Tenn. at 9, 367 S.W.2d at 474.

This may be true as to the *extent* of injuries, but it does not apply to causal connection between an accident and resultant injury. In the case *sub judice* there is no argument as to the extent of injury, but rather as to the causal connection.

In 2 Larson, Workmen's Compensation Law sec. 79.54 (1961), there are several cases which hold in substance that the reason for relaxing the necessity for medical testimony and relying upon lay testimony is not justified

when the medical question is no longer an uncomplicated one and carries the fact-finders into realms which are properly within the province of medical experts as in this case.

In the Texas case of *Travelers Insurance Co. v. Blazier*, 228 S.W.2d 217 (Tex.Civ.App. 1950), an award was made on the theory that claimant's disability was due to a heat stroke, which contributed to his contraction of polio, in spite of the fact that the only medical testimony repeatedly denied that claimant had suffered a heat stroke. This award was reversed on the ground that as difficult an analysis as distinguishing heat stroke from the first symptoms of polio, or of appraising the possible causal connection between the two, was peculiarly within the realm of scientific knowledge, and not the sort of determination a trier of facts could make independently contrary to the only expert testimony in the record.

In the case of *Drakulich v. Industrial Comm.*, 137 Ohio St. 82, 27 N.E.2d 932 (1940), an employee strained his back by accident and died a year later of cancer of the liver. The court held that an award for death benefits could not stand in the absence of medical testimony tracing the causation of the death to the accident.

Massachusetts reached a similar result when the medical question was whether trauma in one part of the body could accelerate a quiescent tuberculosis of an entirely different organ. Green's case, 266 Mass. 355, 166 N.E. 120, 73 A.L.R. 476 (1929).

Finally, Larson says the increasing tendency to make awards unsupported by medical testimony should not be allowed to obscure the basic necessity of establishing medical *causation* by expert testimony in all but the

*simple* and *routine* cases—and even in these cases such evidence is highly desirable.

In a case from Oregon an award for 30% loss of vision in one eye, made without benefit of any medical testimony, was reversed. Claimant testified that he had to wear glasses after the accident, that fine print blurred, and that he had various spots before his eye. The court stressed that there are available scientific tests for measuring loss of vision with considerable accuracy, and that it would be impossible for a jury to arrive at proper appraisal without such tests. *Orr v. State Indus. Acc. Comm'n.*, 217 Or. 249, 342 P.2d 136 (1959).

In the case of *Tate v. Young*, 111 Ohio.App. 159, 162 N.E.2d 134 (1959), the employee suffered a compensable eye injury. Five years later application for additional compensation was filed, alleging that consequent to his original injury the claimant wore glasses for the first time in his life, experienced "sensations" in the injured eye, and when he closed his left eye, he had no sight in his right eye. Solely on the basis of the claimant's testimony, 25% permanent disability was awarded. The award was reversed because the "testimony of this lay witness alone, is not sufficient to establish * * * impairment of vision * * *"

The reader is referred to 2 Larson, Workmen's Compensation Law sec. 79.54 (Supp.1964), for further cases of like import.

In the recent case of *Magnavox Company of Tenn. v. Shepherd,* 214 Tenn. 321, 379 S.W.2d 791 (1964), we reversed the action of the trial court in granting an increase to an award previously made because there was no competent proof of causal connection between the

original injury and the alleged increased disability. In the Shepherd case the employee and her husband testified that her increased disability was due solely to her original injury. An expert medical doctor testified there was no causal connection between the original injury and the increased disability. We held therein and now reaffirm that:

■ Lay testimony is competent to establish such simple but important matters as existence of pain, its location, inability to work, etc., but it may not be received and relied on to prove matters requiring scientific knowledge.

■ The only competent evidence based upon scientific knowledge offered in this case is against the award.

The cause is reversed and dismissed for lack of competent material evidence to show a causal connection between the injury and the resulting damage.

BURNETT, CHIEF JUSTICE and DYER, HOLMES and CHATTIN, JUSTICES, concur.