POCAHONTAS FUÉL COMPANY

*v.*

LAWRENCE ORICK.

404 S.W.2d 500.

(*Knoxville,* September Term, 1965.)

Opinion filed June 3, 1966.

W. Keith McCord, Knoxville, Egerton, McAfee, Armistead & Davis, Knoxville, of counsel, for appellant.

Roy Asbury, Jacksboro, and E. H. Rayson, Knoxville, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, of counsel, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This is a Workmen's Compensation case. The Chancellor found in favor of the injured employee that he was totally disabled. An appeal has been seasonably perfected, able briefs filed and arguments heard. After a full consideration of the record and authorities, we are now in a position to determine the matter.

On April 25, 1963, Orick, while employed by the Pocahontas Fuel Company as a coal miner, was injured. He had been employed by this company for a number of years and had worked in the area mines for virtually his entire adult life. During most of his life he had experienced little illness and none for several years prior to this accident. He was fifty-eight years of age at the time he was injured, and had little formal education.

He was injured on the date above indicated when a large rock fell on him. When this rock fell on petitioner it fell across his right hip and pinned him down and fractured the rami bone, or pubic ring, of the pelvis. He also received a contusion of the left testicle and a contusion of the elbow. As soon as this rock was lifted or pushed off of him, he got in his car and drove to his home. When he arrived there he was unable to get out of his car, was taken out by his family, and they immediately took him to a doctor in LaFollette where he was hospitalized for a period of seven or eight days. This doctor and his father had been the employee's physicians for many years, and he testified as to the fractured bone above mentioned and said that the man was suffering "excruciating pain in the pelvic region." He further found a tenderness in the right pubic region and a swelling of the left testicle. His diagnosis was that petitioner sustained a fracture of the pubic bone, contusion of the left testicle and contusion of the elbow, and noted that his complaints related to his pubic region. Upon his examination he found that petitioner's chest was emphysematous and that he had a moderate scoliosis of the lumbar spine.

After the petitioner was thus hospitalized for a little over a week, he stayed at home in bed for some six weeks

and then used crutches and later a walking stick to get about. The petitioner testified that he continues to suffer pain in his pelvic region and in his testicles and becomes extremely nervous and nauseated when on his feet. He testified that he tried his "very best" to work but could not do so.

Petitioner continued under the care of his local physician following his release from the hospital on up until the time of trial. This local physician saw him many times during a two year period after the accident. At the time of the trial the doctor testified that petitioner "still walked with a limp; he was extremely nervous; he had pain in his groin; his pubic region, in a frog position; he had pain on straight leg raising in both legs, that was more marked on the left; and he had some numbness on the left side of his leg". The doctor likewise testified that petitioner still had pain in his testicle and that he developed a hydrocele of the left testicle, which is fluid on the testicle, and that it was swollen twice its normal size.

This doctor likewise testified about the petitioner's arthritic condition and that this had been accelerated by the injury above referred to. This doctor testified that: "This man didn't walk with a limp before he was hurt. He didn't walk all bent over. I think that is contributing to having arthritis. * * *" This doctor likewise testified that the man was unable to carry on a gainful occupation at the time and that he would not improve. He believed that the man was unable to do manual labor and that his condition had not changed in the six months preceding the time of trial, and attributed his present condition and disability to the mine accident.

. There are a number of well-recognized specialists who testified herein by deposition that there was no fracture and that if there had been it had healed, and that the man was now able to work. The man's doctor referred him to an orthopedic specialist and he in turn advised the man's doctor that petitioner had recovered and was able to work, but regardless of all this testimony by these experts in different fields the man's family physician disagreed with them and said that the man was suffering this disability as a result of this mine accident and had not recovered from the accident.

It is true that these experts in different fields testify herein that he has fully recovered from any disability resulting from this accident and that his disability now, or at the time this case was tried, was due to other factors and conditions not connected with the injury that he had. As said above the local doctor disagrees with their conclusions.

At one place in the record in cross-examining the employee's physician the following occurred:

"Q  Dr. Pryse, Mr. Orick complains now of constant nervousness and pain in the area of the hips, the lower back and the right leg. In view of your examination, is it your opinion then that all of this was attributed to this mining accident that happened in April, 1963?

"A  I think that was the beginning of his trouble.

"Q  I am saying though, is his present disability, his present state of disability, attributable to or proximately caused by this accident?

"A  I think so."

This local doctor likewise attributed the pain, which petitioner claimed he had, and which this doctor believed that he had about the testicle and other pain that petitioner says he continues to have, "to the injury to the nerve where he had his fractured pelvis, and also the way that this man's position, his postural condition, is probably having pressure on a sciatic nerve."

The man had completely recovered, at the time this suit was tried, from the fracture and physical injuries resulting from this accident, but his testicle was still swollen and he was extremely nervous. He had had some nervousness prior to the accident. His family doctor, who testified herein and treated him during his injury, is asked very thoroughly about all these things and was asked if petitioner doesn't have a type of neurosis, and his answer was, "I think that this man is extremely nervous, and it started developing from this accident. He could have a fixation, but it shouldn't cause him to have limitation of motion. Dr. Penn and Dr. Willien said he had normal limitation of motion. I disagree with them."

The man draws full Social Security and he was granted this based on a statement of the family doctor in which the doctor says he sustained this fracture, had chronic bronchitis, moderate to severe hypertrophic arthritis of the lumbar spine with extreme nervousness, and with all this the doctor said he was unable to carry on a gainful occupation. This testimony of the family physician is not entirely based on subjective statements of the injured employee to the doctor but on his examination, knowledge of the man and his belief that this injury caused or precipitated and exaggerated

a probably previous condition which did not totally disable the man or keep him from working.

The urologist who examined this man said he was all right and nothing about this testicle was out of the ordinary now other than what would happen to a man of his age and said that he didn't have any pain from it. The man testified to the contrary and his local physician didn't agree with the opinion of the urologist. Apparently this swelling, pain, etc., had not been there prior to this accident and did come after the accident. There is some logic and common sense to the local physician's opinion about the matter.

This local physician was asked another question which is pertinent herein. He was asked:

"Q  Now will you tell me in what way and in what particulars you disagree with Dr. Willien and Dr. Penn, who examined him?

"A  Well, they say that he has no orthopedic disability, which I say that he does, from the standpoint of his pain on straight leg raising, his pain in a frog-leg position, his numbness in his left leg, the way the man walks, and his nervousness."

█ Thus we see from a rather exhaustive examination of this record that there is ample material evidence aside from the experts who examined this man, who are all on the side of the defendant in error, that is, they testified that there is no disability to the man and that he had recovered, that the man does have a disability resulting from this accident. This is testified to by his family physician, the man who had him as a patient from the time he was injured on up to the time of the trial, it is testified to by the man, it is testified to by his neighbors,

whose testimony will hereinafter be referred to, and consequently when he see the record in this light it negatives entirely the question as stated in the outset of the brief of defendant in error that, "The undisputed facts show that petitioner's disability is due to other factors and conditions not connected with petitioner's employment or his injuries resulting therefrom." All of this was for the trier of facts and he has concluded, as said in the outset, that the disability was due to the accidental injury happening to the man while in the course of his employment.

The petitioner was involved in an automobile accident subsequent to his injuries and sustained a neck injury and was treated by the same family physician. He was not hospitalized, and it is argued herein by the defendant in error that this contributed to his disability. His family physician, who testified for him all the way through, is of the opinion that this automobile accident had nothing to do with the man's present condition.

In the course of the cross-examination of the man's physician he is asked to furnish the court with a copy of a letter that he had received from one of the orthopedic experts. Upon objection the court sustained the objection on the ground that it was hearsay evidence. The letter is in the record and is addressed to the family doctor and this orthopedic surgeon agrees with the statements of the orthopedic experts offered by the defendant in error. Regardless of whether it was admissible or whether it wasn't, it doesn't lend any more weight to this record than is already in the record. As a matter of fact these different opinions have gotten in this record by cross-examination of the family doctor when he was asked about Dr. Willien and Dr. Penn agreeing that the man

had completely recovered and this local doctor said that he disagreed.

■ In the course of this trial the father of the family doctor, who was likewise a doctor, seventy-nine years of age, but who had not treated the employee except that he knew him and things of the kind, was offered herein primarily for the purpose of testifying as a character witness, and he was likewise questioned from the standpoint of an expert witness. This testimony of this older doctor was objected to because it is argued there is no such thing as having a character witness in a civil case. There are instances, of course, when a character witness is permissible in any kind of lawsuit depending upon the facts developed in the lawsuit up until the time he is offered. In this particular case through the whole of the testimony, at least by inference, it was contended that the man was completely well and that he was feigning and that this injury had nothing to do with his present disability. Under such a state of facts the trial judge was clearly within his rights in allowing character testimony. A rather full discussion of this question may be found in *Benson v. Fowler,* 43 Tenn.App. 147, 306 S.W.2d 49. Clearly there is no error here.

What this older doctor said about the petitioner clearly would go to the weight of the testimony rather than the admissibility. The Chancellor clearly had the right to hear people who had known the man, who was being testified about, for many, many years.

■ Two of the assignments go to the admissibility of testimony of two lay witnesses upon the theory that these witnesses did not go into detail enough and lay a ground for testifying as to this man's condition. These witnesses were neighbors who worked with him, and

they testify about how he got around before the accident, how he was doing since, how he handled his legs, etc. They were long time acquaintances and observed him frequently since this accident. They testified about his inability to work after the accident. Testimony of this kind is largely within the discretion of the trier of facts, and as to how much detail they go into establishing their right to testify largely goes to the weight rather than to the admissibility of such evidence. Then, too, the facts about how this man got around are not controverted by anything, and it was some proof that the Chancellor could consider as to whether or not the man did have a disability as testified to by his physician. *Ward v. North American Rayon Corp.,* 211 Tenn. 535, 366 S.W.2d 134; *Rice Bottling Co. v. Humphreys,* 213 Tenn. 8, 372 S.W.2d 170.

It is assigned as error that the trial judge erred in failing to strike the deposition of the local doctor, who treated this man from the time of the injury on until the trial, because "nowhere in the deposition is there a causal connection of the disability to the injury." We have at the outset of this opinion attempted to review the evidence rather fully and quote excerpts from the testimony herein wherein it is shown that in the judgment of this doctor there was more than causal connection. In his judgment there was an actual connection between the disability and the present injury.

We think the findings of the Chancellor herein were well within the scope of the pleadings and the issues as raised by the evidence. The petition undertook to set forth and describe the immediate injuries sustained but it did not, of course, set forth all the medical consequences resulting therefrom, but it was made completely

clear that the issue of disability and the proof met the issues raised. The fact that all aspects of the resulting disability were not explicitly set forth in the petition is no basis upon which to bar recovery. It was all sufficiently set forth so that no one was hurt. The issues were clearly made wherein the employer took the position that under medical testimony he had there was nothing wrong with the man which was connected with the injury, while the employee took the position that as a result of his injury his present disabilities were caused. The Chancellor accepted the employee's theory and the evidence in support thereof.

■ It is not controverted that in Workmen's Compensation cases the finding of facts by the trier of facts, if supported by any substantial evidence, is conclusive upon us. These facts are conclusive not only as to the credibility of the witnesses and the basic facts produced by the evidence, but also as to any reasonable inference to be drawn from these facts. There are many, many cases holding this. We might begin with *Atlas Powder Co. v. Leister,* 197 Tenn. 491, 274 S.W.2d 364, and a legion more that may be found by Shepardizing the question.

This Court in *Ward v. North American Rayon Corp.,* supra, said:

"By 'substantial evidence,' as here used, is meant 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Chief Justice Hughes, *Consolidated Edison Co. [of New York] v. National Labor Relations Board,* 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126, 127, 140; *Cude v. Culberson,* 30 Tenn.App. 628, 639, 209 S.W.2d 506.''

■ We think from what has been shown heretofore that there was, and is, in this record substantial evidence upon which the Chancellor determined the questions herein.

Mr. Larson in his excellent work on Compensation, Vol. 1, sec. 42.22, says this:

"Conversely, when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable."

We followed this line of reasoning in *Buck & Simmons Auto & Elec. Supply Co. v. Kesterson,* 194 Tenn. 115, 250 S.W.2d 39, and in that case we quoted with approval from an Indiana case as follows:

" '* * * The fact that appellee was suffering from a mental or nervous condition resulting from a physical injury, rather than from the physical injury itself, cannot have the effect of relieving appellant from liability. * * *' "

We have in the instant case the local physician stating, as we have quoted heretofore, that the accident caused or enhanced the nervous condition of this man. This doctor likewise states that certain positions or shapes in which the man gets when moving his legs and his back satisfies him that this accident produced the present disability.

This case is entirely different from *American Enka Corp. v. Sutton,* 216 Tenn. 228, 391 S.W.2d 643, in that the injuries being suffered by this man could be testified

to by an ordinary medical practitioner, as this doctor was. Such things as he testified to did not require any particular specialty to diagnose, but the court having heard his testimony, seen the man, and heard other evidence can, under this type of situation, base an award. In the *Sutton* case, supra, expert testimony was required as to the sight of an eye; there was no such testimony in that record, and that is the reason for the holding there. The reasoning of this Court in *General Shale Products Corp. v. Casey*, 202 Tenn. 219, 303 S.W.2d 736, is applicable to the arguments herein made in reference to what the expert doctors said and what the general practitioner said.

The decree of the Chancellor is affirmed for reasons set forth above.