Hugh B. Neas, d/b/a W. R. Neas and Company,
Plaintiff-in-Error.

*v.*

Lucy Snapp, Defendant-in-Error.

426 S.W.2d 498.

(*Knoxville*, September Term, 1967.)

Opinion filed March 27, 1968.

DENNIS L. BABB, Knoxville, of counsel, YANCEY & BUTLER, Knoxville, for plaintiff in error.

JOHN C. PORTER, Newport, of counsel; PORTER & PORTER, Newport, for defendant in error.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

This is a workmen's compensation case. On August 7, 1963, French A Snapp, now deceased, suffered an industrial accident by inhaling exhaust fumes from a gasoline powered motor while in the employment of Hugh B. Neas, doing business as W. R. Neas & Company.

Subsequently, deceased filed a petition for workmen's compensation benefits. On November 28, 1964, a judgment was entered awarding benefits for seventy-five per cent permanent partial disability to his body as a whole. The employer's insurance carrier made monthly payments on the award.

Specifically, the trial judge found deceased, as a result of inhaling the exhaust fumes, became dizzy, nauseated, nervous and emotionally upset.

On July 4, 1965, Snapp died and his widow, Lucy Snapp, filed the petition in the instant case insisting his death resulted from the industrial accident of August 7, 1963.

After a hearing, the trial judge, in finding decedent's death was a result of the industrial injury of August 7, 1963, said:

"The evidence in the present case is rather meager as to the cause of the death of French Snapp. However, it is shown that he never got any better but remained in about the same condition until the time of his death. Dr. Robinson says that he saw him several times and on the 4th day of July, 1964, he was agitated and highly nervous."

Defendant has perfected an appeal to this Court and assigned errors.

Mrs. Snapp testified deceased did not return to work after his industrial injury in August, 1963. She stated deceased had not suffered an injury or any disease after the industrial injury which caused his death. She further stated his complaints and symptoms from the injury in August, 1963, remained the same until his death.

She admitted her husband smoked cigarettes and drank coffee; and that deceased had been under the care of Dr. John Wolaver prior to his death.

After her husband's death, she requested Dr. Drew Mims to perform an autopsy. Over the objection of defendant, Mrs. Snapp was permitted to introduce as an exhibit to her testimony an autopsy report prepared by Dr. T. C. Moss, a pathologist of Memphis, Tennessee. This report stated the cause of death was "probable chronic peptic ulcer."

Dr. W. B. Robinson testified the most common cause of stomach ulcers was excessive formation of hydrochloric acid. That nervousness, anxiety, alcohol, cigarettes and coffee were the most common causative factors. He stated the last time he saw the deceased was on July 7, 1964, and at that time he was agitated and nervous.

Neither Dr. Mims, Dr. Moss nor Dr. Wolaver testified.

■ Defendant insists it was error for the trial judge to admit into evidence the autopsy report. We agree.

"Hearsay evidence, as previously defined, is evidence which derives its value not solely from the credit

to be given the witness upon the stand, but in part from the veracity and competency of some other person. The clearest case of hearsay is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant." 20 Am.Jur., Evidence, Section 458; *Schlickling v. Georgia Conference Association*, 49 Tenn.App. 412, 355 S.W.2d 469 (1961).

In the case of *Tevis v. Proctor and Gamble Distributing Company*, 21 Tenn.App. 494, 113 S.W.2d 64 (1937), a physician undertook to testify to what another physician said with respect to his diagnosis of plaintiff and also from a written report of another physician. The trial judge excluded the evidence. The Court of Appeals affirmed the action of the trial judge, saying:

"But the testimony offered violates the rule prohibiting hearsay evidence from being introduced, and also the rule requiring the best evidence to be produced. The witness sought to testify to statements of Dr. Spurling, thus violating the rule against hearsay evidence, and he also sought to testify as to the contents of a written report made by Dr. Spurling, thus violating the rule requiring the production of the best evidence."

The admission of the report gave petitioner the benefit of an opinion of Dr. Moss whose qualifications are not shown and deprived defendant of the right of cross examination. Petitioner could have had the full benefit of the report by the testimony of Dr. Moss.

Nor do we think the report was admissible under the Uniform Business Records as Evidence Act, codified as T.C.A. Section 24-714, and which reads as follows:

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness, testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Obviously, Mrs. Snapp was not the custodian of the report; nor could she qualify as an "other qualified witness" under the terms and provisions of the statute.

Moreover, there is no evidence from which the trial judge could determine whether, "the sources of information, method and time of preparation" justified the admission of the report.

Accordingly, a proper foundation for the introduction of the autopsy report does not appear in the record.

Every report or other writing is not admissible simply because it was made or rendered in the conduct of some business or profession. A compliance with all the qualifications of the statute is a prerequisite to admissibility. *Tullahoma Concrete Pipe Company v. T. E. Gillespie Construction Company*, 56 Tenn.App. 208, 405 S.W. 2d 657 (1966).

It is next insisted on behalf of defendant there is no material evidence to support the judgment of the trial court.

Having concluded the autopsy report was inadmissible, there is no direct proof in the record of the cause of death.

Dr. Robinson stated he could not relate the death of Snapp to his industrial injury because he did not know the cause of death.

However, it is argued in behalf of Mrs. Snapp her testimony to the effect deceased had suffered no injury or disease subsequent to his injury of August 7, 1963, was material evidence to support the finding of the trial judge.

The burden was on Mrs. Snapp to prove a causal relation between the industrial injury of August 7, 1963, and the death of her husband on July 4, 1965.

Whether the death of Mr. Snapp was caused or hastened by the previous injury is a complicated one and carries the finder of facts into realms which are properly within the province of medical experts. *American Enka Corporation v. Sutton*, 216 Tenn. 228, 391 S.W. 2d 643 (1965).

"Lay testimony is competent to establish such simple but important matters as existence of pain, its location, inability to work, etc., but it may not be received and relied on to prove matters requiring scientific knowledge." *American Enka Corporation v. Sutton*, supra.

If, upon undisputed proof, it is conjectural whether death resulted from a cause operating within decedent's employment, or a cause operating without his employment, there can be no award. *Hagewood v. E. I. DuPont de Nemours & Company*, 206 Tenn. 239, 332 S.W.2d 660 (1960).

It is settled in this State compensation will not be awarded where the cause of death is a matter of

speculation. *Cunningham v. Hembree,* 195 Tenn. 107, 257 S.W.2d 12 (1953).

> "The increasing tendency to make awards unsupported by medical testimony should not be allowed to obscure the basic necessity of establishing medical causation by expert testimony in all but simple and routine cases—and even in those cases such evidence is highly desirable." *American Enka Corporation v. Sutton,* supra.

It was necesary for petitioner to prove her husband's death was attributable to the injury he had received from inhaling the exhaust fumes. She did not offer the evidence of either Dr. Mims, Dr. Moss or Dr. Wolaver; but, instead, offered the testimony of Dr. Robinson who could not relate deceased's death to his injury of August 7, 1963.

We are of the opinion there is no material evidence in the record to support the finding of a causal connection between decedent's death and his injury which occurred on August 7, 1963.

The judgment of the trial court is reversed and the cause dismissed at the cost of petitioner.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.