BOWSER-BRIGGS, INC., and TRAVELERS INSURANCE COMPANY,
Plaintiffs-in-Error,

*v.*

T. H. BENNETT, Defendant-in-Error.

458 S.W.2d 792

(*Nashville*, December Term, 1969.)

Opinion filed October 5, 1970.

CRAWFORD & BARNES, Cookeville, for plaintiffs in error.

LANGFORD, MITCHELL & LANGFORD, Cookeville, for defendant in error.

Mr. Justice Humphreys delivered the opinion of the Court.

This is a Workmen's Compensation appeal, in which the sole issue is whether there is any evidence to support the finding of the trial court that Bennett lost the sight of his left eye because of acid splashed in it. We are of opinion there is such material evidence, and all other issues upon which liability depends having been stipulated, affirm the judgment of the lower court.

The only evidence introduced was Bennett's, and it shows that while working for Bowser-Briggs, Inc., which was subject to the Workmen's Compensation Law, Bennett was injured when a strong acid solution splashed upon his body and into his left eye. The acid was in a tank into which rusted parts were dipped, and was strong enough to burn the rust off these parts. In addition to Bennett's eye, the acid splashed on his head and body where it burned through his hair and clothes, leaving scars on his scalp and torso. Following the accident, Bennett was taken by his employer to a Dr. DeBerry in Cookeville, Tennessee. Dr. DeBerry examined him and then sent him to Dr. Minton, an eye specialist in Nashville, who prescribed glasses. Bennett's last and evidently only eye examination prior to Dr. Minton's was when he entered the Navy during World War II.

Bennett returned to work but being unable to see with his left eye, visited a Dr. Francis of Nashville on several

occasions. Dr. Francis finally sent Bennett to see Dr. Bounds, an eye specialist, also of Nashville. Bennett was wearing the glasses prescribed by Dr. Minton when he visited Dr. Bounds, and Dr. Bounds did not change the lens prescription.

Prior to the trial, Bennett visited a Dr. Hampton Morrison, an optometrist in Cookeville, Tennessee. Dr. Morrison examined Bennett and found that the lens prescribed for him was designed for an eye with twenty-two hundred vision, which indicates virtual blindness. Dr. Morrison was unable to improve on Bennett's visual acuity, and found that he had practically as much vision in his left eye without the glass as he had with it. Dr. Morrison found no actual scar but did find corneal cloudiness which he said could result from a burn such as Bennett had suffered. He testified that the cloudiness would cause a reduction in vision.

Prior to the accident, Bennett had had no trouble with his vision. He had worked as a machinist and as a carpenter, which common experience teaches us requires average vision. After the accident, with his vision corrected, he was unable to read the figures on a tape measure, the figures on his carpenter's square, the figures on a scale, or to distinguish a person ten to twelve feet away. And, he can only distinguish the largest print.

On the record Bennett is industrially blind in his left eye. The only question is whether the evidence is sufficient with respect to the cause of the blindness to sustain the award.

■ It must be conceded that evidence of causal connection depends in part on the testimony of Dr. Morrison. The employer contends this testimony cannot be used for

any purpose, relying on *American Enka Corporation v. Sutton,* 216 Tenn. 228, 391 S.W.2d 643 (1964). However, we do not think that case settles the question. *Enka* put before this Court the question whether the testimony of an optometrist that he thought blindness in the employee's eye was caused by an acid splash, where there was no visible evidence of injury, would be accepted as evidence of cause. Holding that an optometrist's practice is limited to the measurement of powers of visual acuity and the fitting of glasses to correct visual defects, this opinion of the optometrist was rejected and the opinion of an ophthalmologist that the blindness was caused by neuritis of the optic nerve was accepted.

The present case is altogether different. Here, there is the positive testimony of Dr. Morrison that upon examination he found cloudiness on the retina of Bennett's left eye, and it does not take an expert to know that such a condition would interfere with the play of the light rays on the optic nerve, so affecting vision. As to whether the acid caused the cloudiness, it was Dr. Morrison's testimony that he had observed that such a condition sometimes followed such burns. But, whether this last testimony is receivable under *Enka* or not, we do know that prior to the accident Bennett could see and that following it the cornea of his eye is cloudy and he cannot see, and there being no other explanation in the record for the presence of this abnormal condition in Bennett's eye than the acid, it would appear this issue should be found in Bennett's favor. But, let us go further.

It should be noted that in Tennessee the practice of optometry is a profession, *State ex rel. Loser v. National Optical Stores,* 189 Tenn. 433, 225 S.W.2d 263 (1949),

which is defined by a "State Optometry Law." Sec. 63-801 T.C.A. In part this statutory definition is:

> "Section 63-802(a) the employment of objective or subjective methods (either one or both), for the purpose of ascertaining defects of vision or muscular anomalies or other abnormal conditions of the * * *
>
> * * * * * *
>
> "(3) The term 'objective method' means symptoms observed by an optometrist usually with ophthalmoscope or retinoscope; symptoms which the optometrist finds by means of one (1) or more of his five (5) senses; an examination of the eye or eyes conducted by an optometrist, independent of the patient's statements.
>
> "(4) The term 'subjective method' means that which pertains to or is perceived only by the affected individuals not susceptible to the senses of another person."

The particular part of this definition important in this case (not involved in *Enka* as there was no visual evidence of abnormality in the eye) is that part which authorizes optometrists to examine eyes "for the purpose of ascertaining defects or muscular anomalies or other abnormal conditions of the eye". Under this statute the testimony of an optometrist as to his finding and its abnormal character is admissible in evidence.

█ In sum, we have here a case of a man who could see before suffering an industrial accident in which a strong, burning acid is splashed on his body and in his eye. Following the accident he is found to be blind in the affected eye. Upon examination, the cornea, which

is the "transparent part of the coat of the eyeball which covers the iris and pupil and admits light to the interior", Webster's New International Dictionary, Second Edition, page 593, is found to be in a damaged condition in that it is cloudy. In other words, the "window-pane" of the eye is in such a condition as not to freely admit light. More: there is no evidence the cornea was cloudy before the accident. There is no other explanation for the cloudiness than the acid.

Against this, although it was within the power of the employer and its insurer to furnish the court with the testimony of their doctors and so settle all doubt about this case, this was not done.

Being bound to draw from the evidence all inferences favorable to Bennett, *Vester Gas Range & Manufacturing Co. v. Leonard,* 148 Tenn. 665, 257 S.W. 395, and being authorized to draw inferences from circumstantial evidence, *Swift & Co. v. Howard,* 186 Tenn. 584, 212 S.W.2d 388, we conclude Bennett's loss of sight was caused by the strong acid splashed to his eye.

The judgment of the trial court is affirmed.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON and Mc-CANLESS, JUSTICES, concur.