Leslie **COVEY**, Plaintiff-in-Error,

v.

**STATE** of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

May 11, 1973.

As Corrected May 18, 1973.

Certiorari Denied by Supreme Court
Nov. 19, 1973.

388

John L. Warner, Jr. and Bruce Conley, Union City, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, Fleming Hodges, Dist. Atty. Gen., Union City, for defendant in error.

GALBREATH, Judge.

## OPINION

The facts surrounding the tragedy resulting in plaintiff in error's conviction for the first degree murder of his mother are undisputed. During the noon hour meal at the home of Mr. and Mrs. M. A. Callis near Troy, her son by a previous marriage who had been living with them in peace and harmony walked into the kitchen where they were eating and without a word or gesture of warning shot Mrs. Callis through the heart, left shoulder and right forearm, killing her instantly. Mr. Callis was struck in the left arm by one of the four bullets fired by the defendant. The defendant immediately ministered to his step father's wound wrapping the bleeding arm in a towel, and without delay went to the telephone and called the sheriff's office and reported that two people had been shot and requested that a doctor be sent to the scene. The doctor arrived shortly, as did the sheriff. Sheriff T. C. McCullough testified that the defendant told him over and over again that he "didn't know why he did it, that he just

. . . must have been something wrong with him, he just couldn't understand why he did it."

Nothing in the record tends to even remotely suggest a reason for the matricide, probably the most unusual form of murder known to mankind, except the undisputed fact that the defendant had on some five prior occasions been committed to the West Tennessee Hospital at Bolivar under county court adjudication of insanity. The original commitment was in March of 1956, and he was released from the mental hospital in June of that year with a certification that his sanity had been restored. The second commitment was in April of 1957 with a release and restoration the following month. A third commitment was made in December of 1958 followed again by restoration of mental competency. There was a fourth admission to the hospital in March, 1961, with a discharge in June of that year without restoration of mental competency. The date of his last commitment does not appear in the record, but on May 27, 1965, a certificate was filed from the Western State Hospital in the Obion County Court reciting that when the defendant was discharged from that institution on the 17th of May, 1965, he was not competent to conduct his own affairs.

The only defense offered was insanity at the time the crime was committed based on the fact that at the time he was legally under an adjudication of mental incompetency. No expert testimony was adduced by the defense to shed any light on the mental status of the defendant at the time of the crime, but at the request of his appointed counsel he was sent to Central State Hospital in Nashville for observation and a report as to his condition. A Mrs. Nona Owensby, a licensed staff psychologist at Central State Hospital with some fourteen years experience in the field, was permitted to testify over defense objections as a witness for the State in rebuttal to testify that in her opinion the defendant was sane at the time of the crime. This was based on her contacts with the defendant on three occasions over a six week commitment in the hospital. She was also permitted, over objection, to testify that it was the opinion of the hospital staff that the defendant was sane when examined and evaluated over this period of time.

In the first assignment error is alleged because of the court's failure to grant a directed verdict of acquittal on motion made at the conclusion of all the proof, it being contended that the presumption of insanity indicated had not been overcome and that the State had failed to prove the elements of first degree murder.

Whether or not the defendant was insane at the time the crime was committed was for the jury to determine from the proof and a proper, complete charge on the law by the court. At the time the motion was made there were conflicting inferences on the issue, and the trial court properly overruled the motion so far as it went to the question of insanity. However, as noted from our summary of the facts, there was not a scintilla of evidence, other than the defendant's repeated statements to the effect that he did not know why he shot his mother and step father, to indicate his state of mind, the determinative factor in premeditation, at the time of the shootings. In this case we have no clue as to the reason for this senseless crime. From the record it appears the defendant was held in high regard by his victims. They had given him a home and that morning he had eaten breakfast with them and they were waiting for him to come in for the noon meal after he had left to tend the farm cattle that morning as part of his chores in aiding his octogenarian step father. All we know, all anyone knows, is that he walked in and shot the two people reason would suggest would have been the last two people in the world he would have wanted to harm. Then too, the defendant's actions immediately following the shootings in summoning medical assistance and reporting the matter to the sheriff shows his concern for the victims' well being and his complete absence of any effort to con-

ceal the crime. This is all we have, the killing with a deadly weapon.

Once the fact of killing has been established, the law presumes that it was murder in the second degree. See Witt v. State, 46 Tenn. 5; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; and McClain v. State, 1 Tenn.Crim.App. 499, 445 S.W.2d 942. To reduce the degree of the homicide the defense must prove an absence of malice, and a corresponding burden rests on the State to prove premeditation or some other ingredient to raise the degree of the homicide. See Thomas v. State, 210 Tenn. 297, 358 S.W.2d 315.

While it is true that premeditation may be formed in an instant, the State did not introduce any evidence as to what prompted the shooting, and thus we are left without any proof as to the mental state of the defendant which must be shown by direct or circumstantial evidence before premeditation can be said to have existed at all:

> "The mental state of the assailant at the moment, rather than the length of time the act may have been premeditated, is the material point to be considered. The mental process, in the formation of the purpose to kill, may have been instantaneous, and the question of vital importance is—was the mind, at that moment, so far free from the influence of excitement, or passion, as to be capable of reflecting and acting with a sufficient degree of coolness and deliberation of purpose; and was the death of the person assaulted, the object sought to be accomplished—the end determined upon.
>
> \* \* \* \* \* \*
>
> "Whether premeditation is present in a given case is a question of fact . . ."
>
> Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863.

While there are no facts in the record upon which the jury could have based premeditation, there are facts upon which

malice may have been based including the use of a deadly weapon. Therefore neither side has rebutted the presumption that the slaying was murder in the second degree. See Bostick v. State, 210 Tenn. 620, 360 S.W.2d 472.

It follows that the trial judge should have instructed the jury to return a verdict of not guilty of first degree murder, and on remand if no proof is available on the issue of premeditation the prosecution should be confined to second degree murder.

If we had found no other material error a suggestion of remittitur of the judgment of conviction and imposition of the minimum sentence corresponding to the degree of homicide proved would be in order under such authority as Forsha v. State, 183 Tenn. 604, 194 S.W.2d 463. However, other error does appear that forces reversal of the entire judgment.

One such error complained of at trial and here which we sustain was the failure of the trial judge to charge the law correctly on the burden of proof resting on the State to establish sanity of the defendant at the time of the crime after proof raising a reasonable doubt as to this sanity was offered by the defense. The judge in this case instructed the jury, *"Once that insanity is proved to your satisfaction, then it becomes the duty of the State to prove sanity of the defendant, that is, his competence under the law."* By appropriate request the judge was asked to charge that under the circumstances of this case the State must prove sanity, just as all other elements necessary to establish guilt, beyond a reasonable doubt.

In an unpublished concurring opinion in Vernon Miller v. State (Knoxville, February, 1971), Judge W. Wayne Oliver succinctly disgested and expressed correctly the applicable law on the subject of insanity at the time of the crime:

> "The presumption of sanity places the burden of showing insanity at the time

of commission of a crime upon him who asserts it as a defense. Mullendore v. State, 183 Tenn. 53, 191 S.W.2d 149; Spurlock v. State, [212 Tenn. 132, 368 S.W.2d 299].

"While the State is not bound to establish the defendant's sanity in the first instance, if the defendant's or the State's evidence raises a reasonable doubt as to the defendant's sanity, such evidence relieves the defendant of further proof upon that issue and shifts the burden of proof to the State. Stuart v. State, 60 Tenn. 178; King v. State, 91 Tenn. 617, 20 S.W. 169.

"Whenever testimony is introduced countervailing the presumption of sanity and raising a question of the accused's insanity, the State must then establish his sanity to the satisfaction of the jury beyond a reasonable doubt. Jordan v. State, 124 Tenn. 81, 135 S.W. 327; Davis v. United States, 165 U.S. 373, 378, 17 S.Ct. 360, 362, 41 L.Ed. 750, 754.

"Proof of insanity at the time of the crime is sufficient if it creates a reasonable doubt upon that point, in the judgment of the jury, and in that event the accused is entitled to the benefit of that doubt and should be acquitted. Dove v. State, supra [50 Tenn. 348]; Stuart v. State, supra; King v. State, supra; Jordan v. State, supra. Such a reasonable doubt exists if, in the opinion of the jury, the evidence upon the question of the accused's sanity or insanity at the time of the crime is equally balanced—is in equipoise. Dove v. State, supra; King v. State, supra; Jordan v. State, supra.

"When an accused is relying upon the defense of insanity at the time of the crime charged, the jury should be instructed (1) that there is a presumption the accused was sane at that time, (2) that the burden is upon him to show that he was then insane, (3) that if any evidence was introduced by him or by the State fairly raising doubt upon the issue of his sanity at that time, the presumption of sanity ceases to exist, (4) that the State then has the burden to establish the sanity of the accused beyond a reasonable doubt, and (5) that if the whole proof upon that issue leaves the jury with a reasonable doubt as to the defendant's sanity at that time the jury must accord him the benefit of that doubt and acquit him."

Hearsay testimony was admitted over objection to the effect that the medical staff at Central State Hospital had certified that the defendant was presently sane and competent to advise counsel in his defense. Although the trial court was satisfied with the qualifications of the witness, Mrs. Owensby, and allowed her expert opinion testimony on the issue of insanity at the time of the crime based on her personal observations and evaluations of tests, there was no foundation laid for the qualification of other staff members. The State urges admissibility of such testimony and certificate under the Business Records Act, T.C.A. § 24–712 et seq. Our Supreme Court has held that before a medical record may be introduced under the Business Records Act a compliance with all the qualifications of the statute is a prerequisite. Finding error in the admission of the report of a physician whose qualifications had not been proved and who was not available for cross-examination, the Supreme Court quite recently said:

"Defendant insists it was error for the trial judge to admit into evidence the autopsy report. We agree.

" 'Hearsay evidence, as previously defined, is evidence which derives its value not solely from the credit to be given the witness upon the stand, but in part from the veracity and competency of some other person. The clearest case of hearsay is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant.' 20 Am.Jur., Evidence, Section 458; Schlickling v. Georgia Conference As-

sociation, 49 Tenn.App. 412, 355 S.W. 2d 469 (1961).

"In the case of Tevis v. Proctor and Gamble Distributing Company, 21 Tenn. App. 494, 113 S.W.2d 64 (1937), a physician undertook to testify to what another physician said with respect to his diagnosis of plaintiff and also from a written report of another physician. The trial judge excluded the evidence. The Court of Appeals affirmed the action of the trial judge, saying:

" 'But the testimony offered violates the rule prohibiting hearsay evidence from being introduced, and also the rule requiring the best evidence to be produced. The witness sought to testify to statements of Dr. Spurling, thus violating the rule against hearsay evidence, and he also sought to testify as to the contents of a written report made by Dr. Spurling, thus violating the rule requiring the production of the best evidence.'

"The admission of the report gave petitioner the benefit of an opinion of Dr. Moss whose qualifications are not shown and deprived defendant of the right of cross examination. Petitioner could have had the full benefit of the report by the testimony of Dr. Moss.

"Nor do we think the report was admissible under the Uniform Business Records as Evidence Act, codified as T. C.A. Section 24–714, and which reads as follows:

" 'A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness, testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.'

"Obviously, Mrs. Snapp was not the custodian of the report; nor could she qualify as an 'other qualified witness' under the terms and provisions of the statute.

"Moreover, there is no evidence from which the trial judge could determine whether, 'the sources of information, method and time of preparation' justified the admission of the report.

"Accordingly, a proper foundation for the introduction of the autopsy report does not appear in the record.

"Every report or other writing is not admissible simply because it was made or rendered in the conduct of some business or profession. A compliance with all the qualifications of the statute is a prerequisite to admissibility. Tullahoma Concrete Pipe Company v. T. E. Gillespie Construction Company, [56] Tenn.App. [208], 405 S.W.2d 657 (1966)."

Neas v. Snapp, 221 Tenn. 325, 426 S. W.2d 498.

Thus it was error for the Court to permit Mrs. Owensby to testify as to what other alleged experts had said, and it was error to admit the report of such experts without establishing their qualifications.

Actually the evidence was not relevant anyway. There was no plea of present insanity, and the issue of sanity should have been confined to the defendant's condition immediately before, at the time of, and for a reasonable period following the crime. "Sanity at the time of an offense and mental competency at the time of trial are entirely different questions." 44 C.J.S. Insane Persons § 127. Present insanity is an issue that is not involved in guilt or innocence but is separate and apart and sanity must exist, as it is presumed to, before the defendant can be placed on trial for the crime charged. See Jordan v. State, 124 Tenn. 81, 135 S.W. 327. Since present insanity was not pleaded, the refusal of the trial court to permit

defense counsel access to the statements made by the defendant to staff members at Central State Hospital or any of the background reports indicating his competency to stand trial would be at most harmless error. We cannot see any reason why these reports should not have been made available to the defense to assist counsel in making a determination of whether to plead present insanity. The defendant was examined at the institution at the request of his counsel for his benefit, not that of the State. Any statements made during such examination and observation should not be withheld as work products under the provisions of T.C.A. § 40–2044. This statute by its terms makes such statements, together with the names of witnesses who were present when the statements were made discoverable.

We also sustain the assignment of error based on the argument of the attorney general to the jury that if they acquitted on the basis of the County Court records indicating insanity that the defendant could "go right out of here and kill again . . . and say . . . I have a right to do that because I am insane." Such argument lends nothing to the search for truth the jury must conduct and is highly prejudicial. See Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758.

The other assignments of error have been carefully considered and found to be without merit.

Reversed and remanded.

OLIVER and RUSSELL, JJ., concur.