IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MAY 1997 SESSION

FILED

September 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 03-C-01-9606-CR-00217 |
| APPELLEE, | ) | |
| | ) | Knox County |
| v. | ) | |
| | ) | Ray L. Jenkins, Judge |
| ROBERT WILLIAM BREEDEN, | ) | |
| | ) | (Attempted First Degree Murder) |
| APPELLANT. | ) | |

FOR THE APPELLANT:

William C. Talman
Attorney at Law
P. O. Box 506
Knoxville, TN  37901-0506

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN  37243-0497

Elizabeth T. Ryan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Randall E. Nichols
District Attorney General
P. O. Box 1468
Knoxville, TN  37901-1468

Robert L. Jolley, Jr.
Assistant District Attorney General
P. O. Box 1468
Knoxville, TN  37901-1468

OPINION FILED: _____


AFFIRMED


Joe B. Jones, Presiding Judge


# O P I N I O N

The appellant, Robert William Breeden (defendant), was convicted of an attempt to commit murder in the first degree, a Class A felony, by a jury of his peers.  The trial court, finding the defendant to be a standard offender, imposed a Range I sentence consisting of confinement for twenty-three (23) years in the Department of Correction.  In this Court, the defendant contends the evidence is insufficient to support his conviction, the trial court erroneously refused to charge attempt to commit voluntary manslaughter, and the sentence imposed was excessive.  After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

Calvin C. Stinnett, the victim, and his wife, Iva G. Stinnett, lived next door to the defendant and his family for several years.  The defendant and his family testified there had been a few disputes and arguments between the Stinnetts and the defendant's family.  While one of the defendant's stepsons testified the problem existed before the defendant and his mother were married, the defendant testified the problems began when the defendant prosecuted the victim's daughter for threatening one of his stepsons with a deadly weapon in 1992 or 1993.

On the evening of May 28, 1994, the Stinnetts visited the victim's brother, William S. Stinnett, who was dying from cancer. When the Stinnetts returned home, later that evening, the defendant's two stepsons were standing in a window of their home.  The victim thought he heard the two boys make a derogatory remark.  The victim went to the window and asked the two boys whether they made a derogatory remark or had a problem.  They denied making any type of remark.  The victim then returned to his home.

One of the boys ran and told the defendant what had occurred.  The defendant exited the residence, charged into his front yard, and began an argument with the victim.  The victim was near his porch when the defendant began the argument, and the victim remained there during the entire episode.  Although the defendant said he was not afraid of the victim, he went inside his residence, obtained a .22 caliber semi-automatic rifle, and returned to the front yard.  The defendant and the victim continued to argue.  The defendant fired the rifle into the air until he emptied the magazine.  He walked briskly to his

1

residence, reloaded the rifle, and returned to the front yard. During the entire episode, the distance between the location of the defendant and the location of the victim was 120 feet.

The victim asked the defendant to place the rifle on the ground and meet him at the driveway to settle the dispute. According to the defendant's version, the victim, who held a black belt in karate, asked him to meet the victim in the street to settle the matter like men. The victim was not armed with a weapon. When the defendant refused to disarm himself, the victim kept telling him to "shoot me if you have the guts." One of the defendant's stepsons testified the defendant fired several times at the victim. One of the projectiles struck the victim in his head.

The projectile that struck the victim did extensive damage to the left side of his brain. The left side of the brain, called the dominant hemisphere, controls the ability to talk, the ability to understand, the vision in the right eye, and the right motor functions. The victim has no sensation in his legs, has lost his memory of past experiences, and is paralyzed on his right side.

The defendant testified the victim was in his front yard when he exited his residence. Both of his stepsons testified the victim left the yard and was near his own porch when the defendant began the argument with the victim, and the victim never left his yard. The defendant also testified he did not aim the rifle at the victim, and he did not know how the victim got shot.

I.

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support his conviction for attempting to commit murder in the first degree. He argues the State of Tennessee failed to prove the element of deliberation because he did not have the opportunity to reflect upon his actions after his mind was free from the influence of excitement or passion.

A.

When an accused challenges the sufficiency of the convicting evidence, this Court

must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

**B.**

3

Before the defendant could be convicted of attempting to commit murder in the first degree, the State of Tennessee was required to prove the attempt and the elements of first degree murder. In this case, the state was required to establish (a) there was an attempt to kill the victim, and (b) the defendant's conduct was intentional, premeditated and deliberate. Tenn. Code Ann. §§ 39-12-101 and 39-13-202(a)(1). The state established these elements beyond a reasonable doubt.

When this offense was committed, a deliberate act was defined as "one performed with a cool purpose." Tenn. Code Ann. § 39-13-201(b)(1). A premeditated act was defined as an act "done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(2).

It is uncontradicted the victim was unarmed and never made an effort to harm the defendant. Furthermore, the victim never left the area near his porch. The victim and the defendant were never closer than 120 feet. The defendant opted to obtain a rifle. He emptied the magazine of the rifle shooting towards the sky. He then reloaded the rifle, returned to his front yard, and he began shooting the rifle in the direction of the victim. One of the projectiles struck the defendant in his head. The defendant admitted to a police officer he had shot the victim.

A rational jury could find beyond a reasonable doubt the defendant had ample time to reflect upon his conduct, made the judgment to arm himself, fired a full magazine of shells into the air, and, thereafter, reloaded the weapon, returned to the front yard, and coolly began shooting at the victim. There can be no doubt the defendant attempted to kill the victim by shooting him in the head. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

4

## II.

The defendant contends the trial court erred by failing to instruct the jury on the lesser included offense of attempted voluntary manslaughter. The court instructed the jury on attempted first- and second-degree murder. The trial court explained that to be guilty of attempted first-degree murder, the defendant must have acted with the intent to kill the victim and with premeditation and deliberation. The trial court further explained that to be guilty of attempted first-degree murder, the defendant, at the time of the offense, must have been "sufficiently free from excitement and passion as to be capable of premeditation."

Initially, this Court is of the opinion that the refusal to give this instruction, if error, was harmless. Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211. Had the jury found the defendant was acting in such a state of passion when he shot the victim, it would have been unable to find him sufficiently "free from the passions of the moment" as to be capable of premeditation. See State v. West, 844 S.W.2d 144, 147 (Tenn. 1992).[1]

The record establishes the victim walked upon the defendant's property and returned to his own property before the defendant exited his residence and provoked a verbal fight with the victim. The defendant was either armed with the rifle when he appeared in his front yard, or retrieved the rifle during the argument after becoming angry with the victim. The defendant emptied the magazine by shooting in the air. He then reloaded the rifle and began shooting at the victim. He told the police he shot the victim. This factual scenario describes an act of murder, not manslaughter. See Everett v. State, 528 S.W.2d 25, 27-28 (Tenn. 1975).

_____

[1]We note that there is a split of authority over this question within this Court. In State v. Willie Williams, Jr., Hamilton County No. 03-C-01-9501-CR-00330 (Tenn. Crim. App., Knoxville, November 8, 1996), per. app. granted (Tenn. 1997), two members of this Court expressed the view that the failure to give a voluntary manslaughter instruction is not rendered harmless merely because the jury found the defendant had committed first-degree murder. A dissenting member of this Court expressed the view we adopt today. Where the jury is instructed on first- and second-degree murder, first-degree murder being defined as one occurring in the absence of passion, a finding of first-degree murder renders a failure to give voluntary manslaughter instructions harmless.

The victim did approach the defendant's stepchildren. There is evidence in the record that the victim may have been rude, but he did not threaten them. After speaking to the children, the victim immediately left the defendant's property. The victim did threaten the defendant. However, the victim's threats were made while he stood unarmed in front of the defendant, a man firing a semi-automatic rifle in his direction. Even if the victim's threats were serious, he utterly lacked the means to immediately carry them into action. Further, when the defendant's gun ran out of bullets, the victim, a blackbelt in karate, made no attempt to attack the defendant. In short, this Court cannot find that the victim's actions constituted reasonable provocation.

"[W]here the evidence in a record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, it is not error to fail to charge on a lesser offense." State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990); State v. King, 718 S.W.2d 241, 245 (Tenn. 1986).

This issue is without merit.

### III.

The defendant contends his sentence was excessive. He neither contests the enhancement factors found by the trial court, nor claims the trial court erroneously failed to apply mitigation factors. He argues this Court should reconsider his sentence in light of the fact he has no criminal record.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891

6

S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.

The trial court found the personal injuries sustained by the victim were particularly great, Tenn. Code Ann. § 40-35-114(6); the defendant used a firearm during the commission of the offense, Tenn. Code Ann. § 40-35-114(9); the defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10); and the potential for bodily injury to the victim was great, Tenn. Code Ann. § 40-35-114(16).

The defendant used a rifle to shoot the victim in the head causing the victim paralysis in the leg and hand and loss of his peripheral vision. Factors (6) and (9) are therefore clearly applicable. According to the testimony of the victim's wife, the defendant shot in the general direction of her husband while she was on the porch. While creation of a high risk to human life is inherent in the crime of attempted murder, the defendant created a risk to persons beyond the intended victim, justifying the application of factor (10). State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Shane Wendall Yankee, Hawkins County No. 03-C-01-9507-CC-00200

7

(Tenn. Crim. App., Knoxville, August 6, 1996), per. app. denied (Tenn. 1997).

Factor (16) may be used to enhance the defendant's sentence. The victim most assuredly suffered serious bodily injury. However, this fact is not an element of the offense. See State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994).

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
CURWOOD WITT, JUDGE